FRANK E. MACE, Land Agent, In Equity,

*vs.*

THE SHIP POND LAND & LUMBER COMPANY.

Piscataquis.        Opinion December 9, 1914.

*Bill in Equity.   Laches.   Location.   Lots.   Public Lands.   Reservation.*
*Statute of Limitations.   Title.*

In a bill in equity to recover, upon an accounting, the value of the stumpage cut and taken by the defendant from certain public lots in the Plantation of Elliotsville, the same having been referred to a master to determine the quantities and values, and the defendant claiming that no recovery can be had for stumpage cut more than six years prior to the date of the bill,

*Held:*

1.   That under the deed from the Commonwealth of Massachusetts, to the trustees of the Saco Free Bridge Fund, dated October 28, 1829, conveying the Saco Tract so called, the fee vested in the trustees with a condition subsequent annexed to the grant.

2.   That this condition imposed upon the grantees, their successors and assigns, the duty of causing the public lots therein mentioned to be set out.

3.   That Public Laws, 1850, Chap. 196, Sec. 3, authorized the State Land Agent to institute proceedings for the location of reserved lots where they had not been located by the grantee for the purpose expressed in the grant.

4.   That this Act neither removed nor lightened the burden already resting upon the grantee, nor upon this defendant as a successor in title.

5.   That the defendant, having entered upon the entire and undivided tract and cut and carried away timber therefrom, regardless of the imposed condition, cannot now successfully set up laches on the part of the State as a defense to the repayment of the amount due.   The defendant does not come into Court with clean hands.

6.   That the other tract in question, the State Tract so called, was acquired by the State of Maine from the Commonwealth of Massachusetts under the Act of Separation.

7. That the State of Maine by Statutes 1824, Chap. 280 and 1828, Chap. 293, enacted by general law that there should be reserved in every township suitable for settlement, whether timber land or otherwise, one thousand acres of land to be appropriated to such public uses, for the exclusive benefit of such town, as the legislature should thereafter direct.

8. That although the subsequent deed of this tract from the State contained no express reservation of lots for public uses, the grantee is presumed to have known of this general law and took title subject to the public rights therein provided for, and the successors in title are also bound thereby.

9. That the application of laches in equity is largely a matter of judicial discretion, dependent upon the facts and circumstances of each particular case; and when, as here, lapse of time has not changed the situation of the parties, and one is asked to pay what is admittedly due and should have been paid long before, laches cannot be successfully invoked.

10. That the plaintiff should be charged for its proportional part of all expenses incurred by the defendant in connection with the preservation of the common property and for the common benefit of all persons interested therein.

11. That this rule includes fire protection, surveying of lines and scaling, but excludes taxes (in this case), services of defendant's general manager and legal expenses.

On report. Judgment for plaintiff for $3020.27, with interest from July 19, 1909.

This is a bill in equity, in which the plaintiff prays that an accounting may be taken of all stumpage and timber cut and had from certain designated public lots by the defendant, and that said defendant be ordered to pay over to said plaintiff, in his official capacity, such sums as shall be found to be equitably due from it on account of said public lots. An answer by defendant and replication thereto by plaintiff were filed. On the 5th day of December, 1913, the whole cause was referred to Henry W. Oakes, as Special Master to hear and determine the amount to which the plaintiff is entitled as stumpage, who made his report to the Court. At the hearing of the cause on the acceptance of the Master's report, the cause was reported to the Law Court, by agreement of parties, upon an agreed statement of facts and documents mentioned therein, the Law Court to render such judgment as the law and the facts require.

The case is stated in the opinion.

*Scott Wilson,* attorney general, *W. R. Pattangall,* attorney general, *and J. S. Williams,* for plaintiff.

*Hudson & Hudson,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, JJ.

CORNISH, J. Bill in equity to recover from the defendant corporation, upon an accounting, the value of the stumpage cut and taken from certain public lots before their location by commissioners duly appointed by the Court.

The facts leading up to these proceedings are these: Edgar E. Ring, then land agent of the State of Maine, on February 15, 1905, brought a petition, under the statutes, asking that the public lots reserved in the organized plantation of Elliotsville be designated and located. This petition was granted by this Court and the appointment of a Committee to locate the public lots was ordered. *Ring, Pet'r*, 104 Maine, 544. Subsequently the Committee made the location, dated September 13, 1910, viz: 168 acres in the Saco Free Bridge Tract, and 113.9 acres in the State Tract, but none in the Vaughan Tract, all within the limits of said plantation. The defendant had purchased these three tracts from the Onawa Land and Lumber Company on January 31, 1895, and had operated them more or less extensively up to the time of the location of the public lots, and this bill in equity was brought to obtain an accounting for and recovery of the value of the stumpage cut from these lots. The cause was referred to a Special Master whose report, together with the pleadings, is before this Court on an agreed statement of facts, the Court to determine what sum, if any, is due from the defendant.

The defendant in the first instance sets up the Statute of Limitations and contends that the plaintiff cannot recover for any stumpage which was due for more than six years prior to the date of this bill in equity. We will consider this defense in connection with each tract separately.

*The Saco Free Bridge Tract.*

This tract of 4400 acres was granted by the Commonwealth of Massachusetts to the Trustees of the Saco Free Bridge fund on October 28, 1829, with this condition attached, "Conditioned however, that said grantees, their successors and assigns shall lay out and reserve three lots of fifty-six acres each for the following purposes, viz: one lot for the use of the ministry, one lot for the first settled minister, his heirs and assigns, and one lot for the use of schools within the Township, said lots to average in situation and quality with the lands in said tract."

By this grant the title, the fee, vested in the grantees with a condition subsequent annexed to the grant.   For non-performance of this condition the Commonwealth might, perhaps, have claimed a forfeiture and have entered upon the premises for condition broken. *Rice* v. *Osgood*, 9 Mass., 38.   This however was not done, but the condition imposed upon the grantees, their successors and assigns, the duty of causing the public lots to be set out;   This duty they failed to perform.   In 1850 the legislature authorized the State Land Agent to institute proceedings in the Supreme Judicial Court for the location of reserved lots where they had not been lawfully located in severalty by the grantee for the purposes expressed in the grant.   Pub. Laws, 1850, Chap. 196, Sec. 3, now R. S., Chap. 7, Sec. 20.   But this neither removed nor lightened the burden already resting upon the grantees, nor upon this defendant corporation deriving title therefrom.   The State, after the statute of 1850, had the power, but both before and after that time, the defendant and its predecessors in title, had both the power and the duty.   Instead of exercising the power and performing the duty however, the defendant admittedly entered upon the entire and undivided tract and cut and carried away lumber therefrom regardless of the imposed condition, and now having taken property that rightfully should have been set apart by it and have been applied to public uses it raises the question of laches on the part of the plaintiff as a defense to the repayment. This defense cannot avail in this equitable proceeding.   The defendant does not come into Court with clean hands, but with hands filled with the fruits of its own neglected duty.   The accounting asked for must be made.

*State Tract.*

This tract, containing, according to the survey of Caleb Leavitt in 1830, 2626 acres, was acquired by the State of Maine directly from the Commonwealth of Massachusetts under the Act of Separation and is embraced in the division and allotment made December 28, 1822.   *Ring, Pet'r,* 104 Maine, 549.   Then followed general legislation in this State governing the reservation of lots for public uses.   "By Statutes 1824, Chap. 280, as revised by Statutes 1828, Chap. 393, the State by general law enacted that there should be reserved in every township, suitable for settlement, whether timber land or otherwise, one thousand acres of land to be appropriated to such public uses, for the exclusive benefit of such town, as the Legislature should there-

after direct.   By this legislation the State constituted itself a trustee, retaining, as such, the legal title, but subjecting the land to such future public uses, for the benefit of the town, as the State itself might afterwards direct, until the town should be incorporated, when, under the Statute of Uses, the title would vest in the town.   *Dillingham* v. *Smith*, 30 Maine, 370.   Until such incorporation the reserved lands and the funds arising therefrom are therefore under the general control of the State."   *State* v. *Mullen*, 97 Maine, 331-335.

It appears that when the State conveyed this State Tract, so called, there was no express reservation of lots for public uses.   But that was unnecessary.   There was a general statute in existence expressly providing for such reservation, and purchasers from the State and their grantees are presumed to have known of its existence and to have taken their deeds subject to the public rights therein provided for.   The Statutes of 1824 and 1828 have remained a part of the general law of this State and are now preserved in R. S., Chap. 7, Sec. 11.   It was on this ground that the Court held this State Tract to be subject to these public lots in *Ring, Pet'r*, 104 Maine, 544, supra.

Just here lies the distinction between the effect of this public and general law, ignorance of which excuses no one, and the effect of the Resolve of the Commonwealth of Massachusetts passed March 26, 1788, declaring that thereafter in the conveyance of every township of six miles square a reservation of four lots of three hundred and twenty acres each should be made for public uses.   That was a mere declaration of policy and did not of itself create any incumbrance upon the lands or any public rights in them, as was held in *Union Parish* v. *Upton*, 74 Maine, 545.   That case in no wise conflicts with the case at bar.

Coming now to the question of laches raised by the defendant in connection with this State Tract it is to be observed, that while the Court in equity will ordinarily recognize and give effect to the Statute of Limitations affecting actions at law in analogous cases, it obeys the spirit rather than the letter of the statute, and adopts the reason and principle on which it is founded rather than the statute itself. *Phillips* v. *Rogers*, 12 Met., 411; *Lawrence* v. *Rokes*, 61 Maine, 38; *Sullivan* v. *P. & K. R. R. Co.*, 94 U. S., 806.   The Statute of Limitations is a hard and fast rule applicable to actions at law, but the application of the doctrine of laches in equity is largely a matter of

judicial discretion dependent upon the facts and circumstances of each particular case. Equitable relief may be denied when less than the statutory period of six years has elapsed or it may be granted long after the expiration of that period. The chancellor is not bound by clock-ticks. Accordingly when lapse of time has not changed the situation of the parties and one is asked to pay what is admittedly due and should have been paid long before, such a one cannot successfully take refuge in the statute. The language of this Court in *Spaulding* v. *Farwell,* 70 Maine, 17, which was a bill in equity for an accounting between co-tenants, is strikingly apt here: "By the complainants' delay the defendants have lost no evidence necessary to a fair presentation of the case on their part; they have been deprived of no just advantage which they would have had if the claim had been sooner put in suit and they have been subjected to no hardship which might have been avoided by more prompt proceedings. They admit the receipt of the money and the complainant's just share of it as part owner; that they have never paid it to him and assign no just reason why they should not pay it." The facts of the case at bar call for the application of the same rule here, irrespective of the question whether the interest of the State in these public lots is such that the bar of the statute cannot be invoked on the ground that the statute does not apply to the sovereign whether State or National. *U. S.* v. *Beebe,* 127 U. S., 338; *U. S.* v. *Burrill,* 107 Maine, 382. The defendant has been asked here simply to pay what is admittedly due, and the delayed request has in no wise injured its rights.

The only question remaining is that of amount. The State's proportion of stumpage taken from the Saco Free Bridge Tract amounts to $2240.82, and from the State Tract is $838.45, a total of $3079.27 according to the report of the Master, upon the basis fixed by this opinion.

But the defendant sets up a counter claim or offset aggregating over $15,000 covering expenditures claimed to have been made in connection with these two tracts and the Vaughan Tract during the years of operation, of which it says the plaintiff should pay or allow its proportional part. This includes expenditures for taxes, scaling, running lines, fire protection, general management and legal services. We think the true rule to be adopted is this, that the plaintiff should be charged for its proportional part of all expenses incurred

in connection with the preservation of the common property and incurred for the common benefit of all persons interested therein, and also for its proportional part of the expense of scaling, as this was necessary in order to ascertain the quantities removed. Taxes we disallow. The public lots are not subject to taxes and the payment or non-payment of taxes on the portion owned by the defendant could in no wise affect the State's interest. Nor do we think the services of the general manager of the defendant, nor of its attorneys, were rendered for the common benefit. Aggregating therefore the expenses of scaling, including the board of scaler, of surveying lines, and fire protection, we find it to amount to $3539.50. But it appears that two-thirds of the operations calling for these expenditures took place on the Vaughan Tract which is not involved here, while one-third concerned the Saco Tract and the State Tract, reducing the total to $1179.83. The proportional part of this amount to be paid by the State according to the Master's figures is in round numbers one-twentieth, or $59, and that amount should be allowed in set-off.

The net balance due the plaintiff is therefore $3020.27 with interest from the agreed date, July 19, 1909.

*Judgment for plaintiff for $3020.27 with interest from July 19, 1909.*