JOHN C. STEWART

*vs.*

CHARLES L. GRANT

York.    Opinion April 19, 1927.

*A master's report, while not conclusive, has substantially the weight of a jury verdict but may be rejected in whole or in part unless supported by evidence.*

*Laches is negligence or omission seasonably to assert a right if such delay works to the disadvantage of another.*

*The bringing out is not sufficient to relieve a plaintiff from the charge of laches. He must prosecute his action with reasonable diligence.*

In the instant case the delay which was permitted from the filing of the bill in 1909 to 1925, when the matter was set down for a hearing, relating to matters occurring twenty years before, and the facts that witnesses had in the meantime died, that defendant had become a feeble old man with failing memory, that during all such time the plaintiff alone had the possession of and access to all documentary evidence of the transaction, constitutes the defense of laches.

On report.    A bill in equity to dissolve a partnership and for an accounting, filed in 1909 and not set down for hearing until 1925. Heard by master and reported for final decision.    Among other things defendant contended that plaintiff was guilty of laches.    Bill dismissed with costs.

The case fully appears in the opinion.

*George L. Emery, Homer T. Waterhouse and John C. Stewart;* for plaintiff.

*E. P. Spinney,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BASSETT, PATTANGALL, JJ.

PATTANGALL, J. Equity. On report. Bill to dissolve partner-ship and for an accounting. Heard by a master and reported to this court in accordance with the following decree:

> "Special master appointed to take out all testimony relating to the case and the accounts between the part-ies and report his findings to a single justice who shall, thereupon, by agreement, of the parties, report the case upon the master's finding to the law court for final judg-ment."

The bill was filed in December, 1909; decree quoted above filed in September, 1922; hearing before master in October, 1925; master's report filed in May, 1926; case came to this court in September, 1926.

The bill is based on the allegations that plaintiff and defendant entered into a partnership in 1877 to carry on a coaching and car-rying business, and to do any other business which they might mu-tually agree to do; that the plaintiff was then engaged in the prac-tice of medicine and that the net income of his practice was to go to the partnership; profits and losses of the partnership to be divided equally between the plaintiff and defendant; that about the year 1888 they ceased to carry on the coaching business and plaintiff ceased to practice medicine; that the plaintiff was to keep and did keep all accounts of the firm; that defendant had retained possession of cer-tain partnership property and not accounted for the same; that the plaintiff and defendant had other partnership transactions which had not been settled and that plaintiff had paid the partnership debts.

The answer denied that a partnership ever existed; admitted cer-tain joint business dealings; denied any joint property in the hands of defendant and any failure to account for any heretofore in his hands; claimed offsetting accounts and invoked the doctrine of laches.

The master found a partnership; did not definitely state the ex-tent of the same nor what transactions it included and found an in-debtedness from defendant to plaintiff, including interest from the date of the bill to date of hearing, amounting to $3,224.02.

## MASTER'S REPORT

The report of a master is entitled to great weight. While not con-clusive it has substantially the weight of a jury verdict and is not to

be set aside or reversed unless the evidence shows it to be clearly wrong. *Paul* v. *Frye,* 80 Maine, 26; *Lynn Shoe Co.* v. *Auburn-Lynn Shoe Co.* 103 Maine, 334; *Johnson* v. *Johnson Bros.* 108 Maine 280; *Nutter et al* v. *Saco Savings Bank,* 109 Maine, 124.

The finding that a partnership was formed between these parties in 1877 on the lines stated in the plaintiff's bill is supported by evidence and must be accepted.

The finding that defendant is indebted to plaintiff as stated above is not supported by definite evidence and cannot be accepted. The only witnesses called were the plaintiff and defendant. Their oral evidence was supplemented by the production, on the part of the plaintiff, of a large number of books of account to which most careful study has been given. An analysis of these exhibits demonstrates the impossibility, at this time, of ascertaining with any degree of certainty that defendant is indebted to the plaintiff in any sum of money, or to state the accounts between them with accuracy.

The partnership, originally formed in the spring of 1877, under the terms of which the net earnings of the plaintiff as a doctor of medicine and the profits of the defendant's stage and coach business were to be combined and equally divided between the parties terminated in 1887. At the close of that year plaintiff ceased to practice medicine. A few months previous defendant had ceased to operate stage coaches. The partners lost $2970. in the coach business, and made a profit of $3914. in the practice of medicine. These accounts definitely appear in the account books of the plaintiff under the respective headings of "Coach Line" and "Medicine."

But, in the meantime, the parties had entered into other enterprises. These various undertakings were all carried on plaintiff's books under ledger headings which are easily recognizable by reference to the testimony. In 1884 and 1885, they conducted a meat market which was closed out at a loss of $1066. after crediting the account $750. for a building which was afterwards remodelled into a double tenement house owned and occupied by the parties jointly.

In 1889 they purchased the standing timber on the Parson's lot and stripped the same, making a profit of $378. The same year they built the York Beach R. R. Trestle at a profit of $345. In 1887 and 1888 they built a railroad bridge across the York river at York Harbor, profit $162. In 1885 they built the York Beach and Harbor road with J. P. Norton, the profit made by this plaintiff and defend-

ant being $732. In 1888, with Henry Evans, they built the Depot road, profit $77. In 1887 they lost $450. in the building of the Brave Boat Harbor bridge.

These embrace all of their joint transactions which could possibly be regarded as partnership matters. Each showed a credit balance excepting the Coach Line account, the Meat Market account and the Brave Boat Harbor bridge account. These three accounts aggregated a loss of $4486. Against this loss should be figured the aggregate profits of the Medicine, Parson's lot, R. R. Trestle, York River R. R. bridge, York Beach road and Depot road, accounts amounting to $5608. The net result was a profit of $1122. of which amount $750. was represented by the building salvaged from the market business and which they still own jointly.

Plaintiff and defendant had a joint interest in a race mare "Nellie Hastings" and apparently made no profit out of this sporting venture. Plaintiff's books show that he expended $339. in this respect and, as was natural and proper, charged the same to personal profit and loss. There is no reason to include this item in the partnership account.

The accounts concerning the building credited from the Meat Market business and made into a tenement, are not capable of even approximate analysis and should not, in any event, be considered here.

The situation shown by the accounts as stated above negatives certain evidence of the plaintiff. He testified that he put $5000. of the money he earned practicing medicine into the partnership business in order to pay its debts. His entire net earnings as a doctor were $3914. Even that amount was not his. On his own testimony it belonged to the firm. He testified that the enterprises in which he and Grant were concerned taken together showed a loss. This is not true, according to the accounts kept by him.

All of the accounts were kept by plaintiff on his own books. The partnership had no books of its own. The firm name of "C. L. Grant & Co." does not appear as a ledger heading on plaintiff's books until 1898, almost ten years after the parties had ceased to do any active business either as partners or jointly. The figures upon which the master evidently based his findings are contained in three ledger accounts headed respectively "John C. Stewart," "C. L. Grant," and from 1898 on, "C. L. Grant & Co." His findings do not agree with the summary of these accounts but are obviously founded upon them.

He did not refer to the separate accounts kept against each joint enterprise, nor was his attention directed to them.    They are not mentioned in the oral testimony.    They are found in the account books submitted by plaintiff in the form of exhibits.

It may be that the inconsistency between the accounts above referred to and the "Stewart", "Grant" and "C. L. Grant & Co." accounts is susceptible of explanation and reconciliation, but there is nothing in the evidence to indicate it.

It may be that defendant is indebted to the plaintiff, but the evidence submitted fails to sustain the burden in that respect, although it is impossible to assert with any degree of confidence that such is not the case because, of course, even in a profitable business one partner may overdraw to the detriment of the other.    Such may have been the case here.    But evidence is lacking to establish the fact, if it be a fact.

## LACHES

In addition to denying the facts stated in plaintiff's bill defendant, in his answer, invokes the defense of laches.    Transactions occurring between the years 1877 and 1889 are made the subject of litigation begun in 1909 and prosecuted in 1925.    Such a delay calls for explanation.    Equity does not look with favor on the collection of stale demands.    Some fair reasons should appear for permitting twenty years to elapse before bringing suit and sixteen years to elapse after suit is brought before hearing is had or equity will not intervene.

The only explanation for the delay is given by the plaintiff in his direct testimony, in which he said:

> "In 1889, I entered into a partnership with J. P. Norton.    I had been boarding with Mr. Grant and continued to board with him until 1900.    But in 1889 I told him one day that I wanted to have a settlement and he said he was ready to settle at any time.    I said, 'Will you come to the office or shall I bring my books up here?'    He said, 'I don't want any books.    I don't need any.    I can settle without any'.    'Well', I said, 'I can't.    The only way I can settle is by my books.'    He repeated,

'I am ready to settle now. Right here'. I said, 'I'm not', and we parted. Two years after that, when I left Mr. Norton, I repeated to him that I wanted to settle with him and find out if I had anything. I wanted to know it, and if I didn't have anything I wanted to know it. And I made a proposition to him to give him a certain amount of money or take a certain amount to settle. In one case he was to pay the debts, in the other I was to pay them. He wouldn't do either. I said, 'I am going to ask you once more to settle and when I ask you again we'll settle.' And we parted."

So far as the evidence shows the parties never spoke to each other after that interview. Eighteen years passed before anything further was done. Plaintiff was in possession of all the written memoranda relating to their affairs. He presented no statements or account to defendant, either then or thereafter. Defendant never saw the accounts until they were offered in evidence at the hearing before the master. In December, 1909, plaintiff's bill was filed. It contained no account. It did not even contain a list of the business transactions which were claimed to be included in the partnership dealings. It gave no definite information to defendant of plaintiff's claim against him. Answer was filed. Ten years later replication was filed and the case stood without action for three more years. Then the decree and stipulation heretofore quoted was filed. Three years more elapsed. Hearing was then ordered. Defendant had become eighty years of age. He had no records of any kind with which to refresh his memory. The record shows that every person who could have been called as a witness by him or for him had either died or disappeared. He had nothing but an obviously failing memory upon which to depend in meeting plaintiff's attack. No explanation is offered by plaintiff for not having more promptly prosecuted his claim after having brought his bill in equity.

Our court, in *Clark* v. *Chase,* 101 Maine, 270, said: "If it appear that by unnecessary delay plaintiff has placed defendant at a substantial disadvantage this court will dismiss his suit."

To the same effect are the rulings in many other cases.

Laches is negligence or omission seasonably to assert a right. It exists when the omission to do so has continued for an unreasonable and unexplained length of time and under circumstances prejudicial to the adverse party. *Leathers* v. *Stewart*, 108 Maine, 101.

If by the laches and delay of the complainant it has become doubtful whether the opposing parties can be in a position to produce evidence necessary to a fair presentation of their case, or if they are deprived of any just advantage which they might have had before the claim became stale and antiquated, the court in equity will deal with the claim as if barred. *Lawrence* v. *Rokes*, 61 Maine, 43.

The bringing suit is not sufficient to relieve the plaintiff from the charge of laches. He must prosecute his action with reasonable diligence. *Streicher* v. *Murray*, 92 P. 36; *Tinsley* v. *Rice*, 31 S. E. 176; *Thomas* v. *Van Meter*, 45 N. E. 405. A long and unexplained delay in the prosecution of a suit amounts to laches. *Taylor* v. *Carroll*, 44 L. R. A. 479. A party is as much open to the charge of laches for failure to prosecute a case diligently as for undue delay in its institution. *U. S.* v. *Fletcher*, 242 Fed. 818; *Sullivan* v. *Portland & Kennebec R. R.* 94 U. S. 811. It has frequently been held that the mere institution of a suit does not of itself relieve from laches. If one fails in the diligent prosecution of his action, the consequences are the same as though no action had been begun. *Johnston* v. *Mining Co.* 148 U. S. 360.

Laches, in legal significance, is not mere delay that works no disadvantage to another. So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right.

*Chase* v. *Chase*, 20 R. I. 202, Pomeroy's Equitable Jurisprudence, Vol. 5, sec. 21.

Perhaps no better definition of laches is possible than to say that it is an undue delay working to the disadvantage of another. When a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief. 10 R. C. L. 397.

Under the circumstances of this case, and especially in view of the fact that, on the evidence, it is extremely doubtful that defendant

was ever indebted to the plaintiff, and if such were the case, apparently impossible to fix the exact amount of the debt, we have no hesitation in applying ·the doctrine laid down in the quoted cases and finding that "plaintiff has, by unnecessary and unexplained delay, placed the defendant at so substantial a disadvantage that his case should be dismissed."

*Bill dismissed with costs.*
*Decree accordingly.*