HENRY J. KELLEY, ET AL.
*vs.*
THE BROTHERHOOD OF RAILROAD TRAINMEN
AND
THE MAINE CENTRAL RAILROAD COMPANY
HENRY J. KELLEY, ET AL.
*vs.*
JOSEPH V. POIRIER, ET AL.
AND
THE BROTHERHOOD OF RAILROAD TRAINMEN
AND
THE MAINE CENTRAL RAILROAD COMPANY

Kennebec. Opinion July 7, 1952.

*Paul L. Woodworth,* for Plaintiff.

*Saul H. Sheriff,* for Brotherhood.

*Edward H. Wheeler, E. Spencer Miller, Archibald M. Knowles,* for Maine Central Railroad Co.

SITTING: THAXTER, FELLOWS, MERRILL, NULTY, JJ.
(MURCHIE, C. J., and WILLIAMSON, J. did not sit.)

NULTY, J.    The two above entitled cases are before us on appeals from final decrees of the Supreme Judicial Court in Equity for Kennebec County wherein demurrers by the defendants in each case were sustained and the bills dismissed with costs.

The plaintiffs in the first case instituted a bill in equity against The Brotherhood of Railroad Trainmen and The Maine Central Railroad Company and filed the same in the Supreme Judicial Court for Kennebec County on February 16, 1946. On the same day a second bill in equity was filed by certain of the plaintiffs named as plaintiffs in the first bill against other various individuals and including the same defendants named in the first bill. The allegations in both bills are essentially the same and from the record it appears that both bills have been regarded throughout their history as cases which will stand or fall on the same pleadings or testimony. The claim of the plaintiffs in each case in so far as it is pertinent to the issue before us is that The Maine Central Railroad Company, a common carrier, maintained, prior to 1926, three operating divisions. In that year one division—the Mountain Division—was discontinued and its facilities were merged with those of another division—the Portland Division. The merged division was then divided into two districts. The plaintiffs were employees in the original Portland Division and continued as employees of the Portland District after the merger. The bills further alleged that The Brotherhood of Railroad Trainmen and The Maine Central Railroad Company entered into an agreement dated April 28, 1926, providing, among other things, for seniority rights and also for certain procedures for the laying off of employees and the retention of seniority rights. By an amendment effective March 1, 1930, Art. 53 of said agreement was amended to read as follows:

"Article 53—*Trainmen Laid Off.* When reducing forces on a district or division, roster rights shall govern. When forces are increased, trainmen will be returned to the service in the order of their roster rights, provided they are again called to the service within one (1) year. Trainmen desiring to avail themselves of this rule must file their address with the proper official at the time of reduction. . ."

The bills further allege that there was an understanding that said Article 53 in said agreement concerning the laying off of men would not be enforced because of a severe business and economic depression existing in the country in the early 1930's until normal conditions should again prevail; that the plaintiffs were dropped from the roster on March 2, 1933, and were duly notified but that other men working in other divisions or districts under the same conditions were not laid off or dropped from the roster; that the application of said rule of said agreement gave certain trainmen seniority rights which properly, the plaintiffs claim, belonged to them. The bills also aver generally that the plaintiffs did everything in their power to retain their status and did nothing to forfeit their seniority rights and also state that the plaintiffs in the year 1933 had not paid their dues and were not affiliated with said Brotherhood of Railroad Trainmen.

The defendants in each of the two cases filed certain pleadings which included demurrers for various causes. It appears that the plaintiffs failed to prosecute the bills until July 17, 1951, when a hearing was held on the demurrers. It should be noted that by agreement of the parties the two bills were heard at the same time upon the bills and demurrers with the understanding that only if the demurrers should not be sustained would decision be rendered upon the other pleadings. The sitting justice found that the demurrers assigning laches in each case should be sustained and final decrees in each case issued sustaining the demurrers

and dismissing the bills from which decrees the present appeals were taken.

The issue before us is the correctness of the ruling of the sitting justice in sustaining the demurrers on the ground of laches.

We have heretofore considered the effect of a demurrer where on the face of the bill laches appear without any statement of justifiable cause or excuse therefor and we said in *Shattuck* v. *Jenkins, et als.*, 130 Me. 480, 482, 157 A. 543:

> "It is well settled that, where a bill in equity shows such laches on the part of the plaintiff that a court ought not to give relief and no sufficient reasons for the delay are stated, the defendant need not interpose a plea or answer, but may demur on the ground of want of equity apparent on the face of the pleading. *Leathers* v. *Stewart,* 108 Me. 96, 101; *Stewart* v. *Joyce,* 201 Mass. 301; *Snow* v. *Manufacturing Co.,* 153 Mass. 456; *Kerfoot* v. *Billings,* 160 Ill. 563; *Lansdale* v. *Smith,* 106 U. S. 392. . .
>
> "And it is held that reasons for delay which will excuse gross laches in prosecuting a claim or long acquiescence in the assertion of adverse rights must be set forth with sufficient certainty to apprise the court as to how the pleader or his privies remained so long in ignorance, how and when knowledge of the matters alleged first came to their knowledge and the particular means used to effect the concealment alleged, so that from the pleading itself it may be determined whether by the exercise of ordinary diligence the discovery might not have been before made. *Hardt* v. *Heidweiger,* 152 U. S. 547; *Tetrault* v. *Fournier,* 187 Mass. 58; 1 Pom. Eq. Rem. 54; 10 R.C.L. 416."

We have also held that the bringing of suit is not enough to relieve the plaintiffs from the charge of laches. We said in *Stewart* v. *Grant,* 126 Me. 195, 201, 137 A. 63:

"The bringing suit is not sufficient to relieve the plaintiff from the charge of laches. He must prosecute his action with reasonable diligence. *Streicher* v. *Murray,* 92 P. 36; *Tinsley* v. *Rice,* 31 S. E. 176; *Thomas* v. *Van Meter,* 45 N. E. 405. A long and unexplained delay in the prosecution of a suit amounts to laches. *Taylor* v. *Carroll,* 44 L.R.A. 479. A party is as much open to the charge of laches for failure to prosecute a case diligently as for undue delay in its institution. *U. S.* v. *Fletcher,* 242 Fed. 818; *Sullivan* v. *Portland & Kennebec R. R.,* 94 U. S. 811. It has frequently been held that the mere institution of a suit does not of itself relieve from laches. If one fails in the diligent prosecution of his action, the consequences are the same as though no action had been begun. *Johnston* v. *Mining Co.,* 148 U. S. 360."

We also defined laches in *Leathers* v. *Stewart, supra*:

"Laches is negligence or omission seasonably to assert a right. It exists when the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and when it would be inequitable to enforce the right. The circumstances in a given case which are claimed to constitute laches are, of course, questions of fact. But the conclusion whether upon the facts it would be inequitable to enforce the right, and whether the claimant is barred by laches, involves a question of law. In proceedings in equity in which the doctrine of laches has been developed, it is commonly held that the defense of laches may be raised by demurrer, that is, assuming the facts stated in the bill to be true, the bill is not maintainable, *as a matter of law,* because of laches. *Taylor* v. *Slater,* 21 R. I. 104; *Meyer* v. *Saul,* 82 Md. 459; *Coryell* v. *Klehm,* 157 Ill. 462; *Kerfoot* v. *Billings,* 160 Ill. 563; Whitehouse Eq. Practice, Sect. 331.

"Nevertheless, the decision of the court upon the question of laches is so much a matter of discre-

tion, dependent upon the facts in the case, that it should not be disturbed on appeal or exceptions unless clearly shown to be wrong. 12 Ency. of Pleading and Practice, 840.

". . . . . But mere lapse of time is not enough. 'The true doctrine concerning laches,' says the author of Pomeroy's Equitable Jurisprudence, Vol. 5, sect. 21, 'has never been more concisely and accurately stated than in the following language,' used by the Rhode Island court:—'Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right.' *Chase* v. *Chase*, 20 R. I. 202."

The plaintiffs allege and the demurrers admit that the cause of action arose on March 2, 1933, when the plaintiffs were advised that they were dropped from the roster under the provisions of Art. 53 of the then existing amended agreement between said Railroad and said Brotherhood. No statement is made in the bills which sets forth any convincing reason why no action was instituted against the defendants from said March 2, 1933, until the date of the first bill which was November 14, 1945, the date of the second bill being February 11, 1946, and the date of filing of both bills being February 16, 1946. This failure of the plaintiffs to act within a period of almost thirteen years, unless explained with sufficient certainty to appraise the court as to why the plaintiffs delayed so long a time before bringing and prosecuting the cause of action (if they had one), is sufficient to place their alleged claims in such a status

that the court will give the matters alleged in said bills careful scrutiny because the law abhors the airing of stale and vexatious claims. In addition to the delay mentioned above it should also be noted that there was a still further delay of over five years before the matter was brought to the attention of the Court for hearing. In other words, the plaintiffs have allowed over eighteen years to elapse before court action was requested. It is very obvious that the delay in commencing the litigation has been detrimental to the defendants. If seniority under said agreement was restored to the plaintiffs, it necessarily would destroy the seniority gained by others during the thirteen year period prior to the filing of the bills. Such an undue delay would certainly be prejudicial to the defendants and it would be inequitable to enforce such rights after so long a delay.

It should be borne in mind that we are not dealing with the statute of limitations, that is, the hard and fast rule which is applicable to actions at law, but we are asked in this case to apply the doctrine of laches in equity and that is largely a matter of judicial discretion depending upon the facts and circumstances of each particular case. Equitable relief may be denied when less than the statutory period of six years has elapsed or it may be granted long after the expiration of that period. The chancellor is not bound by clock-ticks. See *Mace* v. *Ship Pond Land & Lumber Co.*, 112 Me. 420, 424, 92 A. 486. Laches depends upon judicial discretion, and, as we said in *Stewart* v. *Grant, supra,* at Page 201:

> "Perhaps no better definition of laches is possible than to say that it is an undue delay working to the disadvantage of another. When a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief."

Tested by the rules stated herein the bills in equity are demurrable for the reason, among others, that they contain

"no statement of a justifiable cause or excuse" for the laches apparent on their face. That omission is not cured by the admissions of the demurrers which are no broader than the allegations of the bills and confess no conclusions of law. *Shattuck* v. *Jenkins, et al., supra,* Page 484. The ruling of the sitting justice was correct. Under the circumstances it would be inequitable to grant the right to amend. The mandate will be

*Appeals dismissed in both cases.*