**Dorothy E. LANE et al.**

**v.**

**Alix DEROCHER and Paul J. Derocher et al.**

Supreme Judicial Court of Maine.

July 14, 1976.

Law Offices of James G. Palmer by H. Denton Bumgardner, James G. Palmer, Brunswick, for plaintiffs.

Marshall, Raymond & Beliveau by John V. Bonneau, John G. Marshall, Lewiston, for Alix Derocher.

Murray, Plumb & Murray by Peter L. Murray, Myer M. Marcus, Portland, for Paul Derocher.

Before DUFRESNE, C. J., and POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

Plaintiffs, Dorothy E. Lane, Samuel Holbrook, Walter C. Hinds, Mary A. Hinds, Sumner Holbrook and Donald Watson, and defendants, Alix Derocher and Paul J. Derocher, are owners of lots of land in Blackstone Park, so-called, on Mere Point in the Town of Brunswick, Maine.

On July 17, 1972 plaintiffs instituted a civil action against defendants in the Supe-

rior Court (Cumberland County). The complaint alleged that defendants had constructed buildings on particular land and utilized said land and buildings for the commercial purposes of operating a marina and store in violation of restrictive covenants established

"in accord with a common scheme or plan of development . . ."

which subjected the land at issue to the

". . . restriction that no buildings shall be erected . . . [thereon], and further . . . [it shall be] use[d] . . . for park and pleasure purposes only."

Plaintiffs asked issuance of a permanent injunction: (1)

"preventing Defendants from maintaining or carrying on . . . commercial activities"

and (2)

"requiring . . . Defendants to remove . . . buildings or permanent structures . . . ."

The complaint also asked for damages in the amount of $50,000.00.

Defendants filed an answer and subsequently amended it with the permission of the Court. The case was heard by a Justice of the Superior Court, the parties having waived jury trial in respect to any matters triable of right to a jury.

Concluding that:

"any present . . . [violation] of restrictions applicable to Defendants' land . . . [as here in controversy] is of such long standing that the doctrine of laches prevents any granting of equitable relief",

the Court denied issuance of an injunction and also ordered the complaint dismissed.

In their appeal from the judgment dismissing the complaint plaintiffs assert, as a first point of appeal, that the presiding Justice erred in ordering the entirety of the complaint dismissed solely on the basis of a finding of laches. Defendants argue that laches is a legitimate bar to plaintiffs' case only as it addressed the equity, rather than the law, jurisdiction of the Superior Court. Plaintiffs maintain that their complaint, and the evidence in support of it, raised matters within the law, as well as the equity, jurisdiction of the Court and, therefore, the presiding Justice erred in holding the entirety of plaintiffs' case defeated by his finding of laches.

Plaintiffs claim to have addressed the Superior Court's jurisdiction at law by allegations and proof that defendants had "caused" an excessive use of an easement, in the nature of a right of way, owned in common by plaintiffs and defendants.

We find this claim without merit.

The complaint identifies the real property which plaintiffs allege to be in issue, as wrongfully used by defendants, as that land

". . . which extend[s] from the avenue as shown on . . . [a] plan [recorded in Cumberland County Registry of Deeds, Plan Book 11, Page 69] to the waters of Mere Point Bay."

The complaint avers that (1) *this land* is subject to *restrictive covenants* against the erection of buildings and use for other than park and pleasure purposes and (2) the wrongfulness of defendants' "commercial" use of *this land* is that it was in violation of the restrictive covenants.

At the hearing the parties entered into stipulations which further pinpointed the real property interests of plaintiffs which plaintiffs were claiming defendants had violated. One stipulation was that the "avenue" mentioned in the complaint is a private way never accepted as a public way by the Town of Brunswick. As to this private way, the parties further stipulated that: (1) plaintiffs and defendants are

"owners of lots . . . on the north-westerly side of the way and also owners of land in front of their lots between the way and the water";

(2)

"the land between the way and the water was conveyed . . . subsequent to the original conveyance of the cottage lots . . . on the inland [northerly] side of the way";

and (3) it is the

". . . lots between the way and the water . . . [which] are subject to the restrictions"

asserted in the complaint of plaintiffs.

■ Applying the aforesaid stipulations to the allegations of the complaint, the presiding Justice was warranted in concluding that the conduct of defendants alleged by plaintiffs to be violative of *property rights* of plaintiffs was confined to (1) defendants' use of *that land* owned by defendants *between* the way ("avenue") and the sea and (2) alleged *wrongfulness* in defendants' use derived from its being in contravention of *restrictive covenants* applicable to *that land*.

From such justifiable conclusion the presiding Justice correctly proceeded to the further view that the allegation that defendants' "commercial uses" of defendants' land lying *between* the right of way ("avenue") and the sea had

"caused . . . vehicular use of the avenue . . . to be excessive and unduly burdensome to . . . Plaintiffs",

did not assert a separate, independent cause of action cognizable *at law*, as constituted by violations of plaintiffs' *easement* rights in the "avenue." This allegation presented, rather, only those consequences of the violations of the *restrictive covenants* operative against defendants'

land *between* the "avenue" and the sea which a Court exercising *equity* jurisdiction could take into account under its authority to assess damages and thus give full relief for wrongs cognizable in equity.

Since the presiding Justice committed no error in interpreting the "restrictive covenants" (1) to be applicable *only* to the land *between* the "avenue" and the sea, and (2) to be the *exclusively* claimed source of the rights which plaintiffs were seeking to enforce, the presiding Justice,—having found plaintiffs guilty of laches in the enforcement of their rights deriving from the restrictive covenants—correctly ordered the complaint of plaintiffs dismissed.

As here involved, the restrictive covenants upon which plaintiffs rely are judicially cognizable as "equitable servitudes" enforceable *only* by the exercise of equity jurisdiction. The presiding Justice thus had warrant for interpreting plaintiffs case as being addressed entirely and exclusively to the equity jurisdiction of the Superior Court and, accordingly, laches, if properly found, was a bar to the whole of plaintiffs' case.

■ The dispositive inquiry, then, becomes the other question raised on appeal —whether the presiding Justice erred in finding plaintiffs guilty of laches.

In *Kelley et al. v. Maine Central Railroad*, 148 Me. 95, 90 A.2d 717 (1952) this Court emphasized that

"[t]he decision . . . upon the question of laches is so much a matter of discretion, dependent upon the facts in the case, that it should not be disturbed on appeal . . . unless clearly shown to be wrong." (pp. 99, 100 of 148 Me., p. 720 of 90 A.2d 717)

Here, the evidence warranted the following conclusions. Defendants had commenced construction and operation of their marina approximately twenty-six years before plaintiffs instituted the present action.

In 1946. defendants constructed a wharf and a building of the dimensions 10 by 12 feet. In 1952, a second building was erected in the dock area and the two buildings occupied space of approximately 12 by 30 feet. In 1964 the wood deck in the dock area was removed and replaced with cement, and the two small buildings were made into a single slightly larger building through the construction of a 12 to 15 feet addition. During this period (commencing as of 1952) the marina had been servicing approximately 20 to 30 boats which, more recently, has increased to utilize the marina's present capacity of approximately 42 boats. Also conducted during approximately the same period were a part-time boat storage and repair operation as well as a retail store business involving the selling of lobsters, small grocery items, gasoline, ice and soda-pop. All of these activities had been undertaken in close proximity to plaintiffs and in a manner allowing them to be readily observed by plaintiffs. In addition, plaintiffs had used the store and marina for their own benefit.

On these facts, the presiding Justice acted without error in holding that plaintiffs were barred by laches, conceived as plaintiffs'

". . . omission . . . [to assert a right] continued for an unreasonable and unexplained length of time and under circumstances prejudicial to the adverse party." *Stewart v. Grant*, 126 Me. 195, 201, 137 A. 63, 66 (1927)

The entry is:

*Appeal denied.*

WEATHERBEE, J., sat at argument and participated in consultation, but died before the opinion was adopted.

DELAHANTY, J., did not sit.

All Justices concurring.