STATE OF MAINE                                    SUPERIOR COURT

Sagadahoc, ss.

DANIELE VENEZIANO et al.,

                          Plaintiffs

        v.                                        Docket No. SAGSC-RE-07-006

ROBERT D. SPICKLER,

                Defendant/Third-Party Plaintiff

ADAH P. GINN et al.,

                          Third-Party Defendants

                     **ORDER ON THIRD-PARTY CLAIM**

        Before the court is Third-Party Defendant Adah P. Ginn's Motion for Judgment

As a Matter of Law.  Counsel for the Third-Party Plaintiff Robert D. Spickler and

Third-Party Defendant Adah Ginn presented oral argument on the motion May 3,

2011.

        In her motion, Adah Ginn argues that she is entitled to judgment as a matter of

law based on her affirmative defense of laches, notwithstanding the jury's answers to

special interrogatories to the effect that her predecessor in interest, Herbert Ginn, had

actual knowledge of the deed from R.D. Realty to Olive Spickler for Lot 25 of the

Parkers Neck, Stage One subdivision.[1]  Mr. Spickler objects to the motion, asserting

that the jury's answers preclude a finding of laches.

_____

[1]  Adah Ginn also argues that she is entitled to judgment as a matter of law because she
has superior title to the subject property because she did not have actual or constructive
notice of Olive Spickler's deed, *see* 33 MR.S.A. § 201-A.   Based on its interpretation of
Maine law to the effect that donees do not enjoy the same protection as purchasers for
value, the court has already resolved that argument in favor of Mr. Spickler and does
not address it in detail here.   Both parties' rights are fully reserved.

*Background*

The parties have stipulated to the following facts:

1. In 1976, R.D. Realty Corporation ("RD Realty") owned Lot 25[2] on a 1975 subdivision plan of Parkers Neck, Stage One, recorded in Plan Book 11, Page 60 of the Sagadahoc County Registry of Deeds. (Exhibit 1) Lot 25 is located on Parker Head, in the Town of Phippsburg in Sagadahoc County, Maine.

2. On February 10, 1976, RD Realty executed a deed of Lot 25 on the 1976 plan to Olive S. Spickler (Exhibit 2), but Olive S. Spickler did not record her deed in the Registry of Deeds at that time.

3. On May 23, 1983 RD Realty gave a deed-in-lieu of foreclosure to Depositors Trust Company ("Bank") of all of its unsold Parker Head real estate recorded in Book 661, Page 328. (Exhibit 3).

4. On March 16, 1984, Spickler had a meeting with Herbert E. Ginn in Portsmouth, New Hampshire.

5. On June 24, 1984, the Bank conveyed its Parker Head real estate to Herbert E. Ginn by deed recorded in Book 668, Page 214. (Exhibit 4)

6. In 1984, a plan of Parker Head Colony was recorded in the Registry of Deeds in Plan Book 21, Page 73. (Exhibit 13)

7. On September 6, 1985, Herbert E. Ginn conveyed his Parker Head real estate to a corporation known as "Parker Head" recorded in Book 720, Page 221. (Exhibit 5)

8. At all relevant times, Herbert E. Ginn was the president, one of two directors and one of two shareholders of Parker Head. The other director and shareholder was his wife, Adah P. Ginn.

9. On March 24, 1986, Olive S. Spickler recorded her deed of Lot 25 in the Registry of Deeds in Book 743, Page 171. (Exhibit 2)

---

The court has also considered whether this claim can be resolved on the same basis as in the Law Court's memorandum decision regarding the first-party claims. *See* Veneziano v. Spickler, 2010 Me. Unpub. LEXIS 45. However, the jury finding that Mr. Ginn had actual knowledge of the R.D. Realty conveyance of Lot 25 to Olive Spickler puts him and his successors-in-interest in a different category than the Veneziano and Bates parties.

[2] For brevity's sake, the land encompassed within Lot 25 on the Parkers Neck, Stage One subdivision plan of 1975 is referred to hereinafter as Lot 25.

10. On February 26, 1987, Herbert Ginn had a plan of Parker Head Colony, Phase II recorded in the Registry of Deeds in Plan Book 23, Page 79. (Exhibit 14)

11. On August 4, 1999, the Town of Phippsburg released its interest in old real estate tax liens to RD Realty, Inc. by deed recorded in Book 1701, Page 4. (Exhibit 11)

12. On March 27, 2000, Herbert Ginn had a revised plan of Parker Head Colony, Phase II recorded in the Registry of Deeds in Plan Book 35, Page 23. (Exhibit 15)

13. On October 10, 2002, Herbert Ginn had a plan of Parker Head Point recorded in the Registry of Deeds in Plan Book 37, Page 87. (Exhibit 16)

14. On September 9, 2002, Parker Head conveyed 5+ acres of land, including Lot 25, to Adah P. Ginn as a gift by the deed recorded in Book 2051, Page 272. (Exhibit 6)

15. On November 22, 2002, Parker Head recorded a subdivision plan of its Parker Head real estate in the Registry of Deeds in Plan Book 38, Page 3 (Exhibit 7) and Lot 25 is within the land shown as belonging to Adah Ginn adjacent to Lot 3.

16. On February 5, 2007, Olive S. Spickler conveyed Lot 25 to Robert D. Spickler by the deed recorded in Book 2829, Page 116. (Exhibit 8)

17. On February 7, 2007, the Town of Phippsburg released its interest in old real estate tax liens to Robert D. Spickler by deed recorded in Book 2831, Page 188. (Exhibit 12)

18. On May 1, 2007, Robert D. Spickler filed a third party complaint against Adah P. Ginn in the Sagadahoc County Registry of Deeds, claiming ownership of Lot 25. On May 3, 2007, and a Clerk's Certificate of that action was recorded in the Registry of Deeds in Book 2860, Page 81. (Exhibit 9)

19. Parker Head and Adah P. Ginn paid the real estate taxes assessed by the Town of Phippsburg on Lot 25 dating back to 1993, as part of a real estate tax bill which included adjacent land.

20. Robert Spickler has dismissed any claim of ownership to Lot 25 resulting from deeds from the Town of Phippsburg.

(Stipulations, Feb. 11, 2011).

To these facts, the jury added its answers to special interrogatories. Specifically, the jury decided that Mr. Spickler had proved that the Bank knew that R.D. Realty had conveyed Lot 25 to Olive Spickler when R.D. Realty gave the deed to the Bank in May 1983, and that Herbert Ginn knew of the same conveyance after the March 1984 meeting between Messrs. Spickler and Ginn, and before the Bank conveyed its interest to Mr. Ginn in June 1984.

The jury also found to the effect that Adah Ginn had failed to prove all of the elements of her alternative claim for adverse possession.

*Analysis*

Adah Ginn argues that the doctrine of laches requires that the court grant judgment in her favor, notwithstanding the jury's finding that her predecessor in title— the Bank, Herbert Ginn and Parker Head—all had actual notice of Olive Spickler's ownership of Lot 25.[3]

> Laches will bar a claim . . . where 'the omission to assert a right for an unreasonable and unexplained length of time . . . has been prejudicial to an adverse party, [such that] it would be inequitable to enforce the right.' *Northeast Harbor Golf Club, Inc. v. Harris*, 1999 ME 38, ¶ 19, 725 A.2d 1018, 1023 (quotation marks omitted). Additionally, '[a] party is as much open to the charge of laches for failure to prosecute a case diligently as for undue delay in its institution.' *Kelley v. Brotherhood of R.R. Trainmen*, 148 Me. 95, 99, 90 A.2d 717, 720 (1952) (quotation marks omitted). Whether the equitable doctrine of laches bars a claim is an issue of law . . . . *Longley v. Knapp*, 1998 ME 142, ¶ 10, 713 A.2d 939, 943.

*Van Dam v. Spickler*, 2009 ME 36, ¶ 12, 968 A.2d 1040, 1044.

Delay is a necessary but not sufficient ingredient of laches, as the Law Court has further observed:

---

[3] Adah Ginn does not dispute that Herbert Ginn's knowledge must be imputed to her grantor, Parker Head, given that Herbert Ginn was Parker Head's president.

4

> Laches, in legal significance, is not mere delay that works no disadvantage to another. So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right.

*Stewart v. Grant*, 126 Me. 195, 201, 137 A. 63, 66-67 (1927), *citing Chase v. Chase*, 20 R.I. 202, 37 A. 804, Pomeroy's Equitable Jurisprudence, Vol. 5, sec. 21.

The application of laches is for the court to decide, but the court must base its conclusion of law regarding laches on the applicable facts as stipulated and as determined by the jury.

Mrs. Ginn asserts that Olive Spickler's failure to record her deed for more than 10 years after the conveyance to her, coupled with her and Robert Spickler's failure to assert their rights beyond putting the Bank and Mr. Ginn on actual notice of the deed, constitutes unreasonable delay. She also points to her and Parker Head's actions over the years—notably payment of real estate taxes on the land encompassing Lot 25 as well as subdivision activity affecting that land—and argues that she would suffer unfair prejudice were her laches defense not sustained.[4]

However, the jury's finding that Herbert Ginn actually knew that R.D. Realty had conveyed Lot 25 to Olive Spickler before he acquired the property from the Bank militates against a laches defense. It is important to note that the jury did not find merely that Mr. Spickler had told Mr. Ginn about the deed. Were that the case, there might be a plausible argument that Mr. Ginn could have discounted what he was being told. However, the jury clearly found that Mr. Ginn actually knew about the conveyance of Lot 25 to Olive Spickler before he acquired the property.

---

[4]  This analysis assumes that Adah Ginn is entitled to rely on her predecessors' actions or omissions through "tacking" to support her laches argument, and is not limited to her own acts and omissions.

The court concludes that laches does not apply to this case, for several reasons.

First, although there was a 10-year delay between the February 1976 conveyance to Olive Spickler and the recordation of the deed in March 1986, that recordation came less than two years after Mr. Ginn acquired the property from the Bank and less than seven months after he conveyed it to Parker Head. Therefore, the deed regarding which Mr. Ginn and Parker Head were on actual notice became a matter of public record before nearly all of the actions and events on which Adah Ginn's laches defense relies. Given that Mr. Ginn knew of the conveyance, the unrecorded deed was not a "wild deed" as to him, and he could readily have located it had he attempted to do so at any time after March 1986.

Second, as Mr. Spickler notes in his opposition to Adah Ginn's motion, the act of his telling the Bank and Mr. Ginn about the conveyance of Lot 25 and the fact that Olive Spickler did record her deed eventually do constitute assertions of right. Adah Ginn argues that the Spicklers' failure to do anything at all to advance their ownership interests regarding Lot 25 prejudiced her and her predecessors. Mr. and Mrs. Spickler did not attempt to use the property for many years, but the same is also true of Herbert and Adah Ginn. The land comprising Lot 25 is essentially in the same condition it was since 1984, although there has been substantial activity around it.

Even apart from the timing, as a donee of the land comprising Lot 25, Adah Ginn cannot claim to have been unfairly prejudiced, despite her own lack of actual knowledge, because her predecessors-in-interest had actual notice of Olive Spickler's ownership. *See, e.g., Christman v. Parrotta*, 361 A.2d 921, 926 (Me. 1976) (noting that there was no unreasonable delay where the plaintiff did not act in reliance on the assumption that she held a one-half interest in the disputed property).

Additionally, although Ginn and Parker Head evidently paid the real estate taxes assessed by the Town of Phippsburg for many years, this alone is not sufficient to establish undue prejudice. The amount of taxes paid by the Ginns and Parker Head specifically attributable to Lot 25 is not in evidence (and in fact may be impossible to determine to any exactitude because the determination could require the revisitation of the tax assessors' thought process over decades).

When determining prejudice, "factors that may be considered include changes in value of the property or rights at issue, and the current owners' payment of the costs of maintaining the property." *Van Dam v. Spickler*, 2009 ME 36, ¶ 25, 968 A.2d 1040, 1047 (internal citations and quotations omitted).

The key missing ingredient here is any evidence that either Adah Ginn or Herbert Ginn or Parker Head were induced to change their positions as a result of any delay or inaction on the part of either or both Spicklers. Herbert Ginn cannot assert that he would not have purchased the land had he known of the R.D. Realty deed to Olive Spickler because the jury found that he *did* know before he made the purchase. Because Lot 25 remains largely undeveloped, the Ginns cannot be said to have been prejudiced financially to any substantial degree by any delay on the Spicklers' part.

Laches being an affirmative defense, Adah Ginn has the burden to prove the elements of the defense by a preponderance of the evidence. Based on the evidence, the jury's determinations and the applicable law, the court finds and concludes that she has failed to meet that burden. Thus, Robert Spickler is entitled to judgment regarding ownership of Lot 25 because his title is superior to that of Adah Ginn under the court's analysis.

For the reasons stated above, the entry will be:

Third Party Defendant Adah Ginn's Motion for Judgment as a Matter of Law is denied. Judgment will be awarded to Robert Spickler regarding title to Lot 25. Counsel for the parties are requested to confer on a proposed final judgment. The parties' cooperation in that process and submittal of a joint proposed final judgment shall not be deemed a waiver of rights or positions on any contested issue, it being understood that either or both parties may pursue an appeal.

Pursuant to M.R. Civ. P. 79(b), the Clerk is hereby directed to incorporate this order by reference in the docket.

Dated: 10 May 2011

_____
A. M. Horton
Justice, Superior Court

8