# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00198-CV

### A.G.E., Inc./Henderson L. Buford, III, Appellants

### v.

### Henderson L. Buford, III/A.G.E., Inc., Appellees

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. GN-101117, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

## O P I N I O N

This case involves a dispute over a right of first refusal. Henderson Buford acquired a piece

of commercial property subject to a pre-existing ground lease. The lease agreement contained a first refusal

granting the lessee the option to buy the property on the same terms as any contemplated sale. Neither Mr.

Buford nor the previous owner informed the lessee of the sale to Mr. Buford before it occurred. When Mr.

Buford did inform the lessee of the sale, the lessee threatened to enforce its right of first refusal unless Mr.

Buford consented to a new sublease. Mr. Buford approved the sublease and the lessee made no further

attempt to enforce its right. Three years later, however, the lessee assigned all its interest in the property to

its sublessee, A.G.E., Inc. A.G.E. then sought to exercise the option to purchase and demanded the property for its estimated purchase price, less certain Adamages.@ Shortly thereafter, Mr. Buford terminated the lease because of A.G.E. and the former lessee=s failure to provide him with insurance certificates as required by the lease. After a partial summary judgment in favor of Mr. Buford, and a bench trial on the merits on the remaining issues, the trial court rendered its final judgment. The court determined that A.G.E. was bound by the previous lessee=s election not to enforce its right of first refusal. The court also determined that Mr. Buford properly terminated the lease. A.G.E. appeals these rulings. Finally, the court determined that a lease clause stating that Mr. Buford was to Aprovide@ sewer service unambiguously required him to Amaintain@ such service throughout the duration of the lease, and that Mr. Buford had breached this obligation. Mr. Buford cross-appeals this ruling. We disagree with A.G.E.=s contentions on appeal and will affirm those portions of the trial court=s judgment that A.G.E. challenges. We agree with Mr. Buford=s contention on cross-appeal and will reverse and render judgment in his favor on the issue of sewer-service maintenance.

**BACKGROUND**

In 1964, Paul Walter leased a tract of commercial property to Ralph Moreland in a standard ground lease with a forty-year term. The lease agreement contained a right-of-first-refusal provision that obligated the lessor to give thirty days= written notice to the lessee before any contemplated sale and to allow the lessee the option to purchase the land on the same terms. The lease agreement also contained a clause requiring the lessor=s consent to any sublease.

Mr. Walter, the lessor, died in 1975, leaving the property to his daughter, Paulette Miller. Mr. Buford=s law firm represented Ms. Miller in the probate proceedings. To pay her legal bill of $83,419, Ms. Miller assigned to Mr. Buford a 24.7 percent interest in the property.[1] Meanwhile, Mr. Moreland, the lessee, had assigned his interest in the lease to Citizens State Bank of Gorman. Neither Ms. Miller nor Mr. Buford notified Citizens of the assignment to Mr. Buford. In 1995, Citizens assigned its interest in the lease to Mid Texas Bancshares, Inc. In 1997, Mr. Buford bought the remaining interest in the property from Ms. Miller for $125,000. Neither Ms. Miller nor Mr. Buford gave Mid Texas thirty days= written notice of this sale.

Mr. Buford eventually informed Mid Texas that he had acquired the property in January 1998. Soon after that conversation, Mid Texas protested that Mr. Buford had violated Mid Texas=s right of first refusal, in breach of the lease agreement. Mid Texas threatened to file suit to enforce its right unless Mr. Buford consented to a new sublease. Mr. Buford did consent, and Mid Texas subleased the property to A.G.E. the next month and made no further attempt to enforce its option to purchase. More than three years later, in March 2001, Mid Texas assigned to A.G.E. its interest in the leasehold, including the right of first refusal and any other claim that Mid Texas might have Ain connection with the breach of the Lease when property was sold by Paulette Miller to Henderson Buford III without prior notice of the contemplated sale to Mid Texas . . . . @ Ten days before this assignment, A.G.E. notified Mr. Buford that it had become the

_____

[1] The interest was assigned to Mr. Buford as trustee for his firm in 1993. However, later that same year, the firm dissolved and Mr. Buford acquired its interest in the property.

**3**

lessee of the property and that it was going to exercise the right of first refusal with a written offer to buy the property for $46,312.00 This amount represented A.G.E.=s determination of what Mr. Buford had paid for the property, $159,362.55, less A.G.E.=s Aactual damages@ of $113,050.00, which represented the sum of the rent it had paid plus its Alost profits@ and $15,000.00 expended for Astop gap repairs to the building.@ A.G.E. did not inquire of Mr. Buford what he had paid for his interest before making this offer, but simply made its own determination that he had paid $156,263.55, and that it had suffered damages of $113,050.00.

Mr. Buford responded by sending a letter to Mid Texas and A.G.E. stating that Mid Texas had agreed not to exercise its right of first refusal in exchange for his approval of a new sublease to A.G.E. and that Mid Texas had not attempted to exercise its option within the thirty-day time frame provided by the lease. The letter also announced that, despite repeated requests and notices, Mid Texas had been in default of its obligation under the lease to provide the lessor with insurance certificates, and that he was terminating the lease pursuant to a clause allowing termination Aif [the] [l]essee shall neglect or fail to perform all or any of the covenants or agreements or conditions contained in this agreement. . . .@

Three days later, A.G.E. sued Mr. Buford seeking actual damages, specific performance of its purchase option, and attorney=s fees. Mr. Buford filed a counterclaim seeking declaratory relief, damages for A.G.E.=s failure to vacate the property upon termination of the lease, and attorney=s fees. Mr. Buford then filed two motions for partial summary judgment: one was a traditional motion asking the court to grant his request for declaratory relief; the other was a no-evidence motion asking the court to rule that A.G.E. take nothing because it could produce no evidence of several elements of its breach-of-lease claim.

**4**

The court granted the traditional motion, declaring that A.G.E. and Mid Texas=s failure to provide insurance certificates to Mr. Buford constituted a breach of the lease which, as a matter of law, entitled Mr. Buford to terminate the lease. The court also declared that Mid Texas elected as a matter of law in 1998 not to accept or exercise its right of first refusal, that A.G.E. is bound by that election, and that any option to buy the property on the terms that Mr. Buford had acquired it had lapsed. The court added that A.G.E.=s attempt to exercise the option was ineffective, and that there was no contract to enforce when A.G.E. filed suit. Finally, the court declared that the lease did not require Mr. Buford to repair or maintain the property. The court also granted the no-evidence motion in part, ruling that A.G.E. failed to produce evidence raising a genuine issue of material fact on the element of Mid Texas=s diligence in giving notice of its intent to exercise its first-refusal right, and ordering that A.G.E. therefore take nothing on its claim for specific performance of its option. The court also ruled that A.G.E. failed to produce evidence raising a genuine issue of material fact on the element of timely exercise of the first-refusal option and ordered that A.G.E. therefore take nothing on its claim for damages arising out of Mr. Buford=s alleged failure to give notice of its purchase to A.G.E.=s predecessor, Mid Texas. These rulings were all contained in a consolidated interlocutory order.

After a bench trial on damages and attorney=s fees, the court entered its final judgment incorporating all but one of its interlocutory summary-judgment rulings. Modifying its declaration that the lease did not require Mr. Buford to repair or maintain the property, the court declared that the lease unambiguously required Mr. Buford to maintain sewer service to the property. The court then awarded damages to Mr. Buford for A.G.E.=s failure to vacate the property, offset this award by an award of

**5**

damages to A.G.E. for Mr. Buford=s failure to maintain sewer service to the property,[2] and awarded Mr. Buford his attorney=s fees.  Both parties appeal the trial court=s final judgment.

## DISCUSSION

### *Right of First Refusal*

In its second, fifth, and sixth issues, A.G.E. assails the trial court=s traditional summary-judgment declarations that Mid Texas elected not to exercise its right of first refusal, that this election binds A.G.E., and that there was no contract to enforce at the time A.G.E. filed suit.  Because the propriety of a traditional summary judgment is a question of law, we review the trial court=s decision *de novo.  Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep=t of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.CAustin 1999, no pet.).  The standards for reviewing a traditional motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the

---

[2] In A.G.E.=s first amended answer to Mr. Buford=s counterclaim, it asserted that Mr. Buford had Afailed to provide sewer service to a point on the property, as provided by the Lease.@  The trial court awarded A.G.E. damages of $6,600 Aas the reasonable and necessary expense incurred by [A.G.E.] in the repair of the sewer line leading to the building located on the Property.@

nonmovant and any doubts resolved in its favor. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

A right of first refusal is essentially a dormant option. It requires the owner, before selling the property to another, to offer it to the rightholder on the terms and conditions specified in the contract granting the right. *West Tex. Transmission , L. P. v. Enron Corp.*, 907 F.2d. 1554,1561-62 (5th Cir. 1990) (citing *Martin v. Lott*, 482 S.W.2d 917 (Tex. Civ. App.CDallas 1972, no writ), and *Gochman v. Draper*, 389 S.W.2d 571 (Tex. Civ. App.CAustin 1965), *rev=d on other grounds*, 400 S.W.2d 545 (Tex. 1966)). When the property owner expresses her intention to sell, the rightholder must elect to either purchase the property or decline to purchase it and allow the owner to sell it to another. *Martin v. Lott*, 482 S.W.2d 917, 922 (Tex. Civ. App.CDallas 1972, no writ). A purchaser from a lessor who has given a right of first refusal takes the property subject to that right. When a sale is made in breach of the right of first refusal, it therefore creates in the rightholder an enforceable option to acquire the property according to the terms of the sale. *See id*; *Koch Indus., Inc. v. Sun Co.*, 918 F.2d 1203, 1211 (5th Cir. 1990). However, the option is not perpetual and the rightholder must choose between exercising it or acquiescing in the transfer of property. *Koch Indus.*, 918 F.2d at 1211; *Martin*, 482 S.W.2d at 922.

When the rightholder learns of a sale in violation of her right, she again has the opportunity to either accept or reject within the specified time frame, just as if the offer to buy had been properly noticed, *i.e.*, she must either elect to purchase or decline to purchase. *Martin*, 482 S.W.2d at 922. However, as with all offers, the power of acceptance can be terminated by lapse of time or by conduct of the offeree clearly inconsistent with an intention to purchase. Although the new property owner has a duty

**7**

to make reasonable disclosure of the terms of the purchase to the rightholder, the rightholder also has a duty to investigate any terms that are unclear to her. *See Koch Indus.*, 918 F.2d at 1212. Acquiescence in a sale that violates one=s right of first refusal constitutes conduct inconsistent with an intention to purchase and therefore terminates the offer. *See id.*; *Martin*, 482 S.W.2d at 922. Moreover, the power of acceptance lapses on the expiration of the time specified in the offer or, if there is no such specification, of a reasonable time.

Ms. Miller sold the property to Mr. Buford without offering it to Mid Texas as she was required to do by the terms of the lease. It was Mr. Buford who eventually informed Mid Texas of the sale. When Mid Texas learned of this sale, it had the opportunity either to exercise its option and attempt to buy the property at that time or to decline to exercise its option and let the sale to Mr. Buford stand. If Mid Texas felt that it needed more information about the terms of the sale in order to exercise its optionCas A.G.E. claimsCit could easily have asked either Mr. Buford or Ms. Miller about such terms.[3] Instead, Mid Texas exchanged its option to purchase for Mr. Buford=s consent to a new sublease. After receiving such consent, Mid Texas abandoned any attempt to enforce its option. By allowing its option to lapse after learning of the sale to Mr. Buford and receiving approval of the sublease, Mid Texas elected not to exercise its right of first refusal. It therefore had no such right concerning that sale to assign to A.G.E., and all subsequent attempts by A.G.E. to exercise an option against Mr. Buford were without legal effect.

---

[3] A.G.E. alleges in its brief that Mr. Buford Afraudulently concealed facts@ and Afraudulently manipulated prices.@ The record does not support these allegations.

**8**

A.G.E.=s argument to the contrary is based on *Gochman v. Draper*, 389 S.W.2d 571 (Tex. Civ. App.CAustin 1965), *rev=d on other grounds*, 400 S.W.2d 545 (Tex. 1966).  In *Gochman*, a bank sold land subject to a lessee=s right of first refusal in a foreclosure sale.  The lessee was not offered the option to buy the land either by the bank before the sale or by the new property owners after the sale.  Thirteen months after learning of the sale, the lessee notified the new property owners that he wanted to exercise his right of first refusal.  The property owners refused, and the lessee brought suit.  This Court held that the property owners had not established the defenses of laches, waiver, estoppel, or abandonment because they had never actually afforded the lessee the opportunity to buy the property or informed him of the terms under which they had acquired it.

We note initially that *Gochman* was reversed by the supreme court on the grounds that the foreclosure sale to the property owners was not the type of voluntary sale that would violate the right of first refusal.  *See Draper v. Gochman*, 400 S.W.2d 545, 548 (Tex. 1966).  The supreme court concluded that its holding made it unnecessary to pass on the other questions raised in the case. *Id.*  Because we never should have reached the issue, any statements of this Court implying that a  rightholder=s option to buy does not arise until the property owner has informed it of the specific terms of the sale are no more binding than dicta.

The Fifth Circuit has interpreted our *Gochman* opinion as holding that the rightholder=s duty to investigate does not arise until the owner makes reasonable disclosure of the offerCincluding its basic terms.  *See Koch Indus.*, 918 F.2d at 1212.  We essentially agree with this assessment.  However,

*Gochman* explicitly obligates the rightholder not to conduct himself in a manner that would mislead the property owner. We stated:

> No opportunity of this character [*i.e.*, the opportunity to buy the property on the terms offered to another] has been afforded appellant and it is our opinion that until such opportunity is afforded him that he was under no duty to act in reference thereto. He was, of course, obligated not to so conduct himself as to mislead appellees to their injury . . . . It is undisputed that appellees were not misled by anything that appellant said or did for the reason that they relied exclusively on their conviction that appellant had no right of first refusal under the circumstances [of a foreclosure sale].

*Gochman*, 389 S.W.2d at 579. In *Gochman*, the property owners were not misled. In deciding not to notify the rightholder of the terms of the sale, they relied entirely on their own conviction that the right of first refusal did not apply to a foreclosure sale. Ultimately, the supreme court affirmed their conviction. By contrast, Mr. Buford=s failure to notify Mid Texas of the specific terms of his acquisition was undoubtedly attributable to his reasonable reliance on Mid Texas=s representation that it would not seek to exercise its option in exchange for his approval of the sublease to A.G.E. *See Comeaux v. Suderman*, 93 S.W.3d 215, 223 (Tex. App.CHouston [14th Dist.] 2002, no pet.) (distinguishing *Gochman* from situation where rightholder has some notice of acquisition); *Foster v. Bullard*, 496 S.W.2d 724, 736-37 (Tex. Civ. App.CAustin 1973, writ ref=d n.r.e.) (citing *Gochman* for proposition that a property owner violated duty to disclose, but noting Athe diligent and prompt investigation by [the rightholder] to ascertain the facts surrounding the sale@). *Gochman* does not support A.G.E.=s claims under these circumstances.

Because Mid Texas did not possess any right of first refusal in connection with the sale to Mr. Buford at the time it purported to assign such a right to A.G.E., all subsequent attempts by A.G.E. to

exercise the right against Mr. Buford were therefore ineffective.[4]  Accordingly, we overrule A.G.E.=s

second, fifth, and sixth issues.[5]

---

[4]  We note additionally that even if Mid Texas did have a valid right of first refusal to convey to A.G.E., A.G.E. first attempted to exercise ten days before the assignment from Mid Texas became effective.  A.G.E. next attempted to exercise the option after Mr. Buford had terminated the lease.

[5]  In its third and fourth issues, A.G.E. attacks the trial court=s partial summary judgment that there was no evidence that the option was converted into a contract by timely exercise.  A no-evidence summary judgment is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant=s claim on which the nonmovant would have the burden of proof at trial.  *See* Tex. R. Civ. P. 166a(i); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).  Because A.G.E. failed to produce any evidence that Mid Texas attempted to timely exercise its right of first refusal, we overrule these issues.

*Right to Terminate the Lease*

In its first issue, A.G.E. argues that the trial court erred in rendering its traditional summary-judgment declaration that A.G.E. and Mid Texas breached the lease by failing to provide insurance certificates and that Mr. Buford therefore properly terminated the lease in April 2001. In addressing this issue, we apply the standard for reviewing a traditional summary judgment outlined in the previous section and will affirm the summary judgment only if Mr. Buford established below that he was entitled to judgment as a matter of law. *American Tobacco Co.*, 951 S.W.2d at 425.

The lease agreement requires the lessee to provide insurance of $1,000,000 covering the lessor=s liability for personal injury or property damage caused by use of the premises and to provide to the lessor yearly Acertificates of insurance@ evidencing such coverage. The lease also specifically provides that the lessor may terminate the lease for any default by the lessee that remains uncured after thirty days= notice. The summary-judgment proof shows that between December 1997 and November 2000, Mr. Buford sent Mid Texas twelve notices of default for its failure to provide insurance certificates. When Mr. Buford sent its termination letter in April 2001, neither Mid Texas nor A.G.E. had cured the default by providing the certificates.

A.G.E. claims that Mr. Buford initially breached the first-refusal provision of the lease agreement by failing to notify Mid Texas when he acquired the property and that this breach cannot be Aexcused@ by Mid Texas=s or A.G.E.=s subsequent failure to present insurance certificates. To support this argument, A.G.E. cites our opinion in *Lazy M Ranch Ltd. v. TXI Operations*, 978 S.W.2d 678 (Tex. App.CAustin 1998, pet denied). That case is not on point. *Lazy M Ranch* stands for the well-established

**12**

proposition that a party to a contract may elect to terminate the contract and be excused from performance of any executory obligation if the other party repudiates the contract or commits a material breach. *Id.* at 680-81. It does not imply, as A.G.E. seems to argue, that a party who might himself be guilty of some prior breach can never terminate a contract pursuant to an express clause allowing for termination under certain circumstances.

A.G.E. also argues that Mr. Buford waived his right to terminate the lease based on any lessee default in providing insurance certificates because he continued to accept rent. In support of this position, it cites cases holding that a party can deprive himself of the right to terminate and cease performance by treating a contract as continuing. These cases are not applicable, however, because the lease agreement includes a non-waiver clause that supercedes this common-law rule: ANeither the acceptance of rental hereunder nor lapse of time nor any other act or omission on the part of the Lessor shall . . . constitute a waiver of any breach by Lessee . . . [and] so long as any such breach continues Lessor shall have the right to declare a cancellation.@ Although non-waiver clauses may themselves be waived, they are generally considered valid and enforceable. *See Straus v. Kirby Court Corp.*, 909 S.W.2d 105, 108-09 (Tex. App.CHouston [14th Dist.] 1995, writ denied); *Giller Indus., Inc. v. Hartley*, 644 S.W.2d 183, 184 (Tex. App.CDallas 1982, no writ). A.G.E. has not argued that Mr. Buford waived the clause or that such a clause should be unenforceable in the circumstances of this case.[6] We overrule A.G.E.=s first issue.

---

[6] We similarly reject A.G.E.=s claim that Mr. Buford should be precluded from terminating the lease

agreement because A.G.E.=s breach was not material.  Mr. Buford terminated the agreement pursuant to an express clause authorizing termination in the event of a lessee default.  Materiality is not made a requirement for Mr. Buford to exercise his right to terminate the lease.

*Damages and Attorney=s Fees*

After the bench trial, the trial court awarded Mr. Buford damages of $12,475.50 for A.G.E.=s failure to vacate the property upon termination of the lease. This award represented the difference between the fair rental value of the property and the rent that A.G.E. had continued to pay until the month of the trial. The court found the fair rental value to be $2,650 per month. In its eighth issue, A.G.E. complains that the court erred in admitting Mr. Buford=s testimony that, in his opinion, the fair rental value of his property was Aabout $2,800.@[7]

We review a trial court=s decision to admit or exclude evidence for an abuse of discretion. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). Even if we find that the court erred, we must still find that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment.[8] *See* Tex. R. App. P. 44.1(a)(1); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Alvarado*, 897 S.W.2d at 753-54.

---

[7] Although Mr. Buford testified that he believed the fair rental value to be about $2,800, he only sought to recover an amount based on what A.G.E. had been paying Mid TexasC$2,650 per month.

[8] A.G.E. does not explicitly allege that the trial court=s error probably caused the rendition of an improper judgment. Instead, it argues that because the evidence was inadmissibleAthere was no evidence

to support this award of damages, and that the judgment should be reversed.@

The owner of real property may testify to her opinion of its fair market value, even if she would not qualify to testify about the value of property belonging to someone else. *See Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984); *Barraza v. Koliba*, 933 S.W.2d 164, 169 (Tex. App.CSan Antonio 1996, writ denied). Such testimony is admissible lay opinion under rule of evidence 701. *Barraza*, 933 S.W.2d at 169. A.G.E. draws a distinction between Afair market value@ and Afair market rental value@ and argues that a property owner must qualify as an expert in order to testify about the latter. It does not cite any authority for its distinction; it simply asserts that Athere is no law in Texas which permits . . . [a property owner] to testify about fair market rental value, unless he or she can show some expertise in the area.@ We reject A.G.E.=s argument.

The rule allowing lay-opinion testimony about the market value of the witness=s property can be fairly construed as encompassing testimony about the property=s rental value. *See Douglas v. West Alabama, Ltd.*, 722 S.W.2d 736, 737-38 (Tex. App.C Houston [14th Dist.] 1986, no writ) (stating that owner was qualified to testify to the fair market rental value of her property). So long as the testimony is Arationally based on the perception of the witness,@ *see* Tex. R. Evid. 701, we see no logical reason to adopt A.G.E.=s restrictive interpretation of the concept of market value. The trial court did not abuse its discretion in admitting the evidence.

Even if the court had erred in admitting Mr. Buford=s testimony, A.G.E. has not shown that the court=s determination of the fair rental value of the property turned on Mr. Buford=s opinion testimony. *See Alvarado*, 897 S.W.2d at 753-54. A.G.E.=s president testified that, during the last two years of the sublease, A.G.E. paid $2,650 per month in rent to Mid Texas, and that this price was the result of a

**17**

voluntary agreement between the parties. This is certainly relevant evidence of the fair rental value of the property for the months immediately following the assignment of the lease to A.G.E. A.G.E. incorrectly claims that without Mr. Buford=s opinion testimony there is no evidence of the fair rental value of the property. We overrule A.G.E.=s eighth issue.[9]

In its ninth and tenth issues, A.G.E. complains about the court=s award of attorney=s fees. The court ordered that Mr. Buford recover $29,766.50 in attorney=s fees for prosecution of his actions for affirmative relief, *i.e.*, termination of the lease and damages. A.G.E. argues that the court should not have made this award because Mr. Buford had not first presented his claim to A.G.E. and allowed it to tender payment within thirty days. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 38.002 (West 1997). The court also ordered that Mr. Buford recover $45,417 in attorney=s fees for opposing A.G.E.=s request for declaratory relief and prosecuting his own closely related counter-request for declaratory relief. A.G.E. argues that this award runs afoul of the rule that a party may not use a counterclaim seeking a declaratory

---

[9] In a single sentence at the end of A.G.E.=s argument on this issue, it opines that because Mr. Buford sought a continuance that caused the trial to be delayed for three months, he therefore should be unable to recover any lost-rent damages for that period. We reject this argument. Mr. Buford is a practicing lawyer and sought a short continuance because he had a jury trial set in Bell County the same week that trial in this case was scheduled. The court granted his request. A.G.E. did not plead or prove that this delay was inequitable in any way.

judgment resolving disputes already pending before the court as a vehicle for the recovery of attorney=s fees. *See Thomas v. Thomas*, 902 S.W.2d 621, 626 (Tex. App.СAustin 1995, writ denied).

Because A.G.E. raises these complaints for the first time on appeal, we conclude that it has not preserved the issues and we will therefore not address them. *See* Tex. R. App. P. 33.1(a). To preserve a complaint for appellate review, a party must have presented it to the trial court "by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought . . . with sufficient specificity to make the trial court aware of the complaint." *Id.* Where the objection at trial is not the same as the complaint presented on appeal, the complaint is not preserved for appellate review. *See Rogers v. Stell*, 835 S.W.2d 100, 101 (Tex. 1992).

At the bench trial, A.G.E. did not make the complaints it raises for the first time here. Its motion for new trial is similarly barren of any such complaints. **Because A.G.E. did not afford the trial court the opportunity to correct its alleged mistake, the error was not preserved for appellate review.** *Id***. We overrule the ninth and tenth issues asserted by A.G.E.**

**Having overruled all of A.G.E.=s issues that are necessary to dispose of its appeal,[10] we now turn to the one issue that Mr. Buford raises on appeal.**

---

[10] In its seventh issue, A.G.E. challenges the trial court=s declaration that A.G.E. has no valid claim against Mr. Buford for any repair or maintenance expense incurred, other than that necessary to maintain sewer service to the property, and that A.G.E. has no valid claim for any past rents paid to Mr. Buford. A.G.E. argues that Mr. Buford breached the lease by failing to honor its right of first refusal, and that this breach caused it to suffer two types of damages: It was required to pay rent that it would not have paid, and to make Аstop gap@ repairs that it would not have made, were it the owner of the property. Because we are affirming the trial court=s determination that Mr. Buford is not liable for any breach of lease, we need not address this issue. *See* Tex. R. App. P. 47.1 (opinions must be as brief as practicable).

*Failure to Provide Sewer Service*

After initially declaring in its interlocutory partial summary judgment that the lease did not require Mr. Buford to repair or maintain any part of the property, the trial court reversed itself and declared in its final judgment that the lease unambiguously imposes on Mr. Buford an ongoing duty to maintain sewer service to the property. Mr. Buford, in a single issue, argues that the trial court got it right the first time and erred when it reversed its initial decision. We agree.

**Whether a contract is ambiguous is a question of law for the court to decide.** *Friendswood Dev. Co. v. McDade + Co.*, **926 S.W.2d 280, 282 (Tex. 1996).** The determination is made by looking at the contract as a whole in light of the circumstances present at the time the contract was executed. *Id.* The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *McDade + Co.*, 926 S.W.2d at 282. Parol evidence is not admissible for the purpose of creating an ambiguity. *National Union*, 907 S.W.2d at 520. If, however, the language of the contract is uncertain or it is susceptible to two or more reasonable interpretations, it is ambiguous. *Id.*; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Only where a contract is first determined to be ambiguous may the court consider the parties= interpretation and admit extraneous evidence to determine the true meaning of the instrument. *National Union*, 907 S.W.2d at 520.

The lease clause at issue reads as follows: ALessor . . . hereby agrees . . . [t]o provide sewer service to a point on the premises which the Lessee may designate.@ We think that when this clause

is looked at in the context of the lease as a whole, it unambiguously requires the lessor to provide the original sewer-service line, but not, as the trial court determined, to maintain the sewer service for the life of the forty-year lease.  The agreement appears to be to be a pure ground lease.  It explicitly provides that *the lessee* is to erect any structures and to pay all utilities, taxes, and other expenses associated with the premises.  As a whole, the lease seems to  contemplate that all continuing expenses relating to the commercial use of the property are to be borne by the lessee.  While the word Aprovide@ can in some contexts be construed broadly to mean Aprovide and maintain,@ in the context of this lease agreement such a construction is incongruous and unreasonable.  Because the lease clause unambiguously does not require the lessor to provide continuing sewer service to the property, we sustain Mr. Buford=s issue, reverse this portion of the trial court=s judgment, and render judgment in favor of Mr. Buford.[11]

## CONCLUSION

The trial court correctly determined that Mid Texas elected not to exercise its right of first refusal, that A.G.E. was bound by that election, and that Mr. Buford properly terminated the lease.  The court did not err in admitting Mr. Buford=s opinion testimony about the value of his property or in assessing attorney=s fees against A.G.E.  However, the court did err in determining that Mr. Buford was required to maintain sewer service to the property and in awarding damages to A.G.E. for Mr. Buford=s failure to maintain such service.  We therefore reverse the portion of the trial court=s judgment pertaining to the

---

[11] Even if the clause were ambiguous, which is the most that A.G.E. could credibly claim  and what Mr. Buford argues on appeal, we would still reverse and render because the only relevant parol evidence in the record resolves the ambiguity in favor of Mr. Buford=s interpretation.

maintenance of sewer service, render judgment that A.G.E. take nothing on that issue, and affirm the trial court≈s judgment in all other respects.

Bea Ann Smith, Justice

Before  Justices Kidd, B. A. Smith and Yeakel

Affirmed in Part; Reversed and Rendered in Part

Filed:   March 20, 2003