The STATE of Texas, Appellant

v.

CENTRAL EXPRESSWAY SIGN AS-SOCIATES and Viacom Outdoor, Inc. f/k/a Infinity Outdoor, Inc., Appellees.

No. 05–06–00003–CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 2007.

Rehearing Overruled Dec. 6, 2007.

Susan Desmarais Bonnen, Office of Atty. Gen., and Jeff Blackwelder, Asst. Atty. Gen., Austin, MO, for Appellant.

Joe H. Staley, Jr., Law Offices of Joe H. Staley, Jr., Dallas, TX, Richard L. Rothfelder, Rothfelder & Falick, LLP, Houston, TX, for Appellee.

Before Justices MOSELEY, O'NEILL, and LAGARDE [1].

## OPINION

Opinion by Justice O'NEILL.

The State of Texas appeals a condemnation award entered in favor of appellees Central Expressway Sign Associates (CESA) and Viacom Outdoor, Inc. f/k/a Infinity Outdoor, Inc. In three issues, the State contends (1) the trial court erred in excluding the State's expert appraisal witness, (2) the trial court erred in admitting valuation testimony of the property owners, and (3) the evidence is legally and factually insufficient to support the jury's damages award. For the following reasons, we affirm the trial court's judgment.

The State filed a petition for condemnation seeking to acquire land in the City of Dallas. The land was located at U.S. 75 and IH 635 and was required for a highway improvement known as the "high five interchange." At the time the petition was filed, the land was being used for a billboard site. The billboard was on an easement owned by appellee CESA who leased the billboard site to appellee Viacom. Viacom in turn sold space on the billboard to advertisers.

After the State filed its petition, the trial court appointed special commissioners, who determined the fair market value of the property was $2,012,300 to be awarded

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

to the various fee owners, including CESA as the owner of the easement, and Viacom as the owner of the leasehold on the easement. The State objected that the award was excessive and demanded a jury trial on the issue of the fair market value of the land. Viacom and the State subsequently settled most of the dispute between them, including the issue of Viacom's compensation for its interest in the land taken. The issue of the fair market value of the land taken nevertheless had to be tried because the State did not settle with CESA.

Prior to trial, the court held a hearing to determine the admissibility of expert testimony. After the hearing, the trial court struck both the State's and CESA's valuation experts. As a consequence, no expert testimony was offered at trial and the only witnesses on value were CESA's principals, George Allen and Randolph Perry, who were permitted to testify as owners of the easement. Allen testified that, in his opinion, the fair market value of the land taken was $2,500,000. Perry opined that the land was worth between $2,500,000 and $2,800,000. The jury found that the fair market value of the land was $1,850,000. The trial court entered a judgment in favor of CESA and Viacom jointly in accordance with the jury's verdict. The State appeals.

■■■ In its first issue, the State asserts the trial court erred in excluding the testimony of its expert witness, Grant Wall. The testimony of an expert appraisal witness in a condemnation action, like other expert testimony, must be relevant to the issues in the case and based upon a reliable foundation. *Exxon Pipeline Co. v. Zwahr,* 88 S.W.3d 623, 628 (Tex.2002); *Guadalupe–Blanco River Auth. v. Kraft,* 77 S.W.3d 805, 807 (Tex.2002). When an expert's opinion is challenged, the trial court acts as an evidentiary gatekeeper to screen irrelevant and unreliable expert evi-

dence. *Zwahr,* 88 S.W.3d at 629. The burden is on the proponent of the expert to establish reliability. *Guadalupe–Blanco River Auth.,* 77 S.W.3d at 807. The trial court has broad discretion in determining the admissibility of expert testimony. *Zwahr,* 88 S.W.3d at 629.

■■■ Under the "undivided fee rule," in a condemnation proceeding where there are different interests in real estate, the valuation of the various interests is usually determined by ascertaining the market value of the property as though owned exclusively by one party. *State v. Ware,* 86 S.W.3d 817, 822–23 (Tex.App.-Austin 2002, no pet.) (citing *City of Waco v. Messer,* 49 S.W.2d 822, 823 (Tex.Civ.App.Waco 1932), *rev'd on other grounds,* 124 Tex. 417, 78 S.W.2d 169 (1935)); *see also Urban Renewal Agency of City of Lubbock v. Trammel,* 407 S.W.2d 773, 774 (Tex.1966). The market value so found should then be apportioned among the various interests. *Ware,* 86 S.W.3d at 823; *Trammel,* 407 S.W.2d at 774.

At the pretrial hearing, Wall testified that, in his opinion, the value of the property was about $360,000. Wall testified that he used an income capitalization approach to value the property. Specifically, he determined the rental income CESA received and then capitalized that income into a value. Wall testified that his value opinion included the value of both CESA's and Viacom's interest. In calculating a value, Wall considered only rent CESA received from "the ground;" he did not include any income Viacom received from advertisers because, in his opinion, such income was not attributable to the land, but was business income. Further, Wall opined that Viacom's leasehold interest was zero because the site was leased at the market rate.

After hearing the substance of Wall's testimony, the trial court determined it

was unreliable apparently because Wall did not consider Viacom's interest when he valued the land. On appeal, the State argues this ruling was error for a number of reasons. We begin with its assertion that Wall properly disregarded Viacom's interest in valuing the property because Viacom had settled its dispute with the State.

Although Viacom and the State did reach an agreement regarding Viacom's recovery, Viacom was not dismissed from the case. In the jury charge, the jury was asked to determine the fair market value of the land taken, which included Viacom's interest. In accordance with the jury verdict, the trial court's judgment awarded the fair market value to CESA and Viacom jointly. None of the parties before us complains of the manner this case was submitted to the jury or that the judgment was entered in favor of both CESA and Viacom. Given these circumstances, the State cannot now assert that it was seeking to obtain only CESA's interest. *See Ware*, 86 S.W.3d at 824 (when State seeking to obtain only one interest, only the value of that interest need be determined).

Moreover, the State agrees that under the "undivided fee rule," any market valuation must include all interests in the property, including Viacom's interest. Under this rule, which the State concedes applies, the fact finder should determine the value of the entire property as though owned by a single entity. The State cannot take the simultaneous and inconsistent position that only CESA's encumbered interest should have been valued.

Having determined that the manner in which this case was submitted as well as the undivided fee rule requires valuation of the property as though it was owned exclusively by one party, we turn to the State's argument that Wall's opinion, which disregarded income Viacom received from advertising sales in determining income generated by the property, was nevertheless reliable. The State suggests Wall properly ignored income Viacom received from selling billboard space because the billboard structure itself was personal property, not real property. The State thus devotes much of its argument to whether the billboard structure was real or personal property. However, the trial court did not exclude Wall's testimony because he treated the billboard as personal property. To the contrary, the trial court ruled in favor of the State on this issue and excluded CESA's expert because he treated the billboard as realty. Moreover, at trial, the court specifically instructed the jury that the billboard was personal property. Thus, the State's argument that the billboard is personal property presents nothing to review.

■ Next, the State argues the trial court abused its discretion in determining Wall's method of applying the income approach to land valuation, under the facts of this case, was unreliable.[2] Under the income approach, income-producing property is valued by estimating its future income and applying a capitalization rate. *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 183 (Tex.2001). Although Wall used an income approach to valuing the land, he did not consider income this billboard site or comparable billboard sites generated through advertising. According to the State, income Viacom received from its use of the billboard site cannot be considered because the land did not generate the advertising income. Rather, the

2. The parties agree no comparable sales were available to assess the market value of the property.

State contends that income was "business income," which is not recoverable in an eminent domain case. CESA responds that the advertising income Viacom received from using the property had to be considered because, utilizing the undivided fee rule, the income was generated by the property and all income generated from the property should be considered, regardless of whether it was retained by Viacom or paid to CESA as rent.

■■■■ Profits received from conducting a business on property are generally not admissible to prove value in an eminent domain case. *Herndon v. Housing Auth. of City of Dallas*, 261 S.W.2d 221, 222 (Tex.Civ.App.-Dallas 1953, writ ref'd). This is because (1) the business, which was not taken, can be operated in another location, and (2) the amount of profit depends more upon capital invested, general business conditions and the trading skill and business capacity of the person conducting it than it does on the location of the business. *Id.* On the other hand, evidence of profits derived from the intrinsic nature of the real estate itself, as distinguished from profits derived from operating a business on the land, can be considered in determining land value. *See id.* Thus, it is proper to consider profits derived from use of property where earnings depend on the location, soil or character of the property itself. *See Ark. State Highway Comm'n v. Cash*, 267 Ark. 758, 590 S.W.2d 676, 678 (1979). In other words, "[w]here the character of property is such ... that, independently of the labor, skill or knowledge of its owner, it lends itself peculiarly to a particular use, a business based upon such use and the profits therefrom may be considered in ascertaining the market value of the land." *A.G. Davis Ice Co. v. U.S.*, 362 F.2d 934, 937 (1st Cir.1966) (quoting 4 Nichols on Eminent Domain § 13.3(2)).

The issue presented is whether the trial court abused its discretion in determining

Wall did not properly consider income Viacom received from the property. The billboard site, in a very busy location in North Dallas, generated a significant amount of income from advertisers. Viacom received this income by entering into "advertisement contracts." The contracts were location specific and required Viacom to do little more than post and maintain signs on the billboard structure. The value of the physical billboard structure itself was insignificant to the value of the billboard site and would have little or no value without real property. The amount paid for the advertising was thus largely (if not completely) based on the location of the billboard site, not the skills and activities of Viacom or the structure of the sign. We conclude income generated from such advertising is generated by the real property upon which the billboard structure is located. *See Vivid, Inc. v. Fiedler*, 219 Wis.2d 764, 580 N.W.2d 644, 654 (1998) (concluding income generated by billboards not business income because such income is generated by the location of the billboard and not the labor and skill of sign company); *see Ark. State Highway Comm'n*, 590 S.W.2d at 678 (concluding income derivable from the sale of advertising space on a billboard was income from the property itself and not income from conducting a business on the property).

We acknowledge that, as cited by the State, the Connecticut Supreme Court in *Commissioner of Transportation v. Rocky Mountain*, 277 Conn. 696, 894 A.2d 259 (2006), reached an apparently contrary result. In that case, the court concluded income received from advertising on billboards was derived from conducting a business on real estate. *Rocky Mountain* is distinguishable because it appears the landowner in that case was seeking a separate award of lost business income. Moreover, we disagree with the reasoning of the Connecticut court. According to the Con-

necticut court, income generated by a billboard site is "business income" and not the product of an interest in real property because "[b]illboards can be removed from the condemned property and placed on another site, and the income they generate from the advertising placed on them also can be 'replicated' on another site." *Id.* at 284. This argument presumes income is generated from the structure alone and not the location upon which it is placed. However, as noted previously, income received from a billboard site is location specific and not unique to the billboard structure. Further, to relocate the billboard, another such site would have to be acquired. Any such income so generated is not being "replicated" any more than it could be said "ordinary" rent is replicated when a landlord generates income after acquiring another rental property. Because we conclude income received for billboards is primarily attributable to the land, we cannot agree with the Connecticut court.

The State also suggests income generated by a billboard should not be considered because such income is determined by traffic flow and damages for loss of "visibility" and "exposure to traffic" are not compensable. The State relies on *State v. Schmidt*, 867 S.W.2d 769, 774 (Tex.1993), which concerned how to determine damages in inverse condemnation cases and in cases where there are alleged damages to the remainder. In such cases, *Schmidt* explained, a landowner cannot recover for damages to land caused by lessened visibility or diversion of traffic. The issue presented in *Schmidt* did not concern billboards or the method of determining fair market value of land physically taken. The State has not provided any meaningful argument regarding why *Schmidt* should be extended to the facts of this case. *See Minnesota v. Weber–Connelly, Naegele,* 448 N.W.2d 380, 385 (Minn.Ct.App.1989) (utilizing income from advertising on billboard to value property does not improperly award damages for diversion of traffic). We conclude *Schmidt* is inapplicable.

In sum, the trial court could have determined Wall's testimony was not reliable because he completely disregarded the income the property generated from advertising sales. Thus, we cannot conclude that the trial court abused its discretion in excluding Wall's testimony. We resolve the first issue against the State.

In its second issue, the State contends the trial court abused its discretion in admitting the testimony of George Allen and Randy Perry. Allen and Perry, CESA's owners, each testified to the value of the land taken. Allen valued the land at $2,500,000 while Perry valued the land at between $2,500,000 and $2,800,000. The State asserts the trial court erred in admitting this evidence because their testimony was based on capitalization methods that included "business income." It also asserts that Allen and Perry testified to inadmissible hearsay.

 Allen's valuation testimony was repetitious and lengthy and the State's objections to that testimony were few and far between. Specifically, Allen repeatedly offered his opinion testimony regarding value and testified to hearsay. The State did not object every time Allen offered the offending testimony and did not seek or obtain a running objection to Allen's testimony. Moreover, Perry's testimony duplicated Allen's complained-of testimony. The State directs us to a single objection to Perry's testimony, and that objection was not ruled on by the trial court. To preserve error in the admission of evidence, a party must object and obtain an adverse ruling each time the complained-of evidence is presented or obtain a running objection to the evidence. *See Davis v. Fisk Elec. Co.,* 187 S.W.3d 570, 587–88 (Tex.App.-Houston [14th Dist.] 2006, pet. granted); *Duperier v. Tex. State Bank,* 28

S.W.3d 740, 755–56 (Tex.App.-Corpus Christi 2000, pet. dism'd). We conclude the State did not preserve error regarding the owners' valuation testimony. We resolve the second issue against the State.

■ In its third issue, the State asserts the evidence is legally and factually insufficient to support the jury's verdict. The jury found the fair market value of the land taken was $1,850,000. According to CESA's principals, the fair market value of the land taken in this case was between $2,000,000 and $2,500,000. They based their opinions on their own calculations and on what experts in the billboard industry told them.

In this issue, after briefly reciting the standard of review, in a single paragraph of analysis, the State asserts the only evidence of value was "incompetent as it was based on the loss of business income and personal property, and loss of visibility and exposure to traffic." Although the State purports to present both legal and factual sufficiency complaints, its only contention concerns competency of CESA's evidence. As such, it has presented only a legal sufficiency challenge. *See Emerson Elec. Co. v. American Permanent Ware Co.,* 201 S.W.3d 301, 312 (Tex.App.-Dallas 2006, no pet.) (factual sufficiency challenge waived when not properly briefed).

■ Moreover, to show the evidence was incompetent, the State relies on its assertion that the owners improperly considered "business income" in valuing the property. However, we have previously concluded that, contrary to the State's assertion, income received for the bill-

boards is attributable to the land itself.[3] Furthermore, unlike other types of incompetent evidence, inadmissible hearsay admitted without objection is not denied probative value merely because it is hearsay. *See City of Keller v. Wilson,* 168 S.W.3d 802, 812 n. 29 (Tex.2005). We conclude the State has not shown the evidence was insufficient to support the jury's verdict.

We affirm the trial court's judgment.

---

3. CESA's principals were permitted to give valuation testimony in their capacity as owners of the easement. An owner is competent to testify to the value of their own land even if he may not otherwise qualify as an expert. *Porras v. Craig,* 675 S.W.2d 503, 505 (Tex. 1984); *A.G.E., Inc. v. Buford,* 105 S.W.3d 667, 676 (Tex.App.-Austin 2003, pet. denied); *Ra-*

*mex Const. Co. v. Tamcon Servs., Inc.,* 29 S.W.3d 135, 138 (Tex.App.-Houston [14th Dist.] 2000, no pet.). The State does not contend in this appeal that Perry and Allen were not competent to testify to value because they did not own the "entire bundle of rights" taken. We express no opinion in that regard.