2009 ME 36

**Brian VAN DAM et al.**

v.

**Olive SPICKLER et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 14, 2009.
Decided: April 7, 2009.

Theodore A. Small, Esq. (orally), Peter J. Van Hemel, Esq., Bernstein, Shur, Sawyer & Nelson, Portland, for Olive and Robert Spickler.

David J. Fletcher, Esq. (orally), Fletcher & Mahar, Calais, for Brian M. and Jane H. Van Dam.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

LEVY, J.

[¶ 1] Olive and Robert Spickler appeal from a judgment entered in the Superior Court (Washington County, *Hunter, J.*)

following a non-jury trial. The court determined that the Spicklers' claim for specific performance of a right of first refusal contained in a deed is barred by laches. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The trial record, reviewed in the light most favorable to the judgment, supports the following facts. *See Stickney v. City of Saco*, 2001 ME 69, ¶ 13, 770 A.2d 592, 600. Robert Spickler is an experienced real estate broker, developer, and instructor who purchased a large tract of coastal land in the Town of Roque Bluffs in 1967. He subsequently conveyed the land to his corporation, Chamber's Point, Inc., which subdivided the property and, in 1978, sold an undeveloped oceanfront parcel, Lot 25, to Marco, Inc. The deed to Marco contained a covenant prohibiting Marco from selling Lot 25 "without previously offering it to Chamber's Point, Inc. at the same price and terms."

[¶ 3] In 1986, Marco sold Lot 25 to Brian and Jane Van Dam for $39,000. The purchase and sale agreement required the Van Dams to make a $5500 down payment; the $33,500 balance was to be financed through Marco for five years. Marco did not notify Chamber's Point of the sale. Although the Van Dams were aware of the covenant containing a right of first refusal in favor of Chamber's Point, they believed that it only affected them "going forward" and that it did not affect their title.[1] The Van Dams did not inquire whether Marco had satisfied the covenant by offering Lot 25 to Chamber's Point prior to closing with the Van Dams. In 2007, the still undeveloped lot had a value of at least $100,000.

[¶ 4] Unaware that Marco had sold Lot 25 to the Van Dams, Chamber's Point conveyed all of its interest in Lot 25 to Olive Spickler, Robert's wife, in 1990, thus transferring the right of first refusal to her. The deed was not recorded until September 1998. Chamber's Point was subsequently dissolved. Although Olive held the right of first refusal, she deferred to Robert regarding any decisions involving that interest.

[¶ 5] The Spicklers first learned of the sale of Lot 25 to the Van Dams in March 1999, when Brian Van Dam telephoned Robert to request a key to a gate that Robert had erected across the access road to Lot 25. During this call, Brian explained that he owned Lot 25. Robert responded that the Van Dams did not have "good title to the lot" and that Marco was the owner. In the same conversation, Robert informed Brian that the Van Dams owed money for repairs to the access road, that Robert would send an invoice, and that upon payment of the invoice Robert would send them a key. Robert also stated that he would give the Van Dams a waiver if they provided him copies of the closing documents from the sale. Robert never sent an invoice, and the Van Dams never paid the road fees or provided the closing documents.

[¶ 6] Brian and Robert had several more conversations over the next several months in which they discussed the right of first refusal. On at least one occasion, Robert demanded to know the price and terms under which the Van Dams purchased Lot 25. Brian told Robert that he "paid $35,000 for it but didn't tell [him] the terms." Robert suggested that the Van

---

1. The Van Dams' deed was recorded in the Washington County Registry of Deeds in October 1986. The deed incorporated by reference a document containing amended restrictions, covenants, and easements applicable to the property, including the right of first refusal, which Robert had previously recorded in 1978. The same document was cited in the earlier deed from Chamber's Point to Marco.

Dams hire a lawyer to resolve the matter. When the Van Dams refused that advice, Robert indicated that the Spicklers would file a notice in the Registry of Deeds declaring their rights in Lot 25. In September 2000, Olive recorded a document titled "Claims of Lien" in the Washington County Registry of Deeds referencing Lot 25 and her right of first refusal.[2] The Spicklers did not notify the Van Dams of this action.

[¶ 7] In November 2001, the Van Dams wrote to Robert again requesting a key to the gate and restating their ownership interest in Lot 25. Robert replied and reiterated that the Van Dams did not have marketable title. In September 2003, the Van Dams received an invoice for road repairs, which they paid by check. However, Robert returned the check, explaining that the Van Dams were not the owners of Lot 25. The Van Dams have paid all real estate taxes on Lot 25 since their purchase in 1986.

[¶ 8] The Van Dams filed suit against the Spicklers in February 2004, seeking damages for slander of title and a declaratory judgment establishing the rights of the parties.[3] The Spicklers filed an answer as well as a five-count counterclaim that sought, among other things, the establishment of a constructive trust and an order of specific performance compelling the Van Dams to offer Lot 25 to the Spicklers. The Van Dams answered the Spicklers' counterclaim and raised the doctrine of laches as an affirmative defense.

[¶ 9] The Spicklers filed a motion for a summary judgment that asserted that the Van Dams "have only a possessory interest in the subject property, and hold the property in constructive trust for the benefit of [the Spicklers]." The court granted

the motion in part and denied the motion in part. Specifically, the court concluded that the Van Dams held more than a possessory interest in Lot 25 and, in fact, held valid title to the property. The court also concluded that the Spicklers held a valid right of first refusal. The court found that the Van Dams were therefore subject to the "risk that circumstances warrant the imposition of a constructive trust and a subsequent order of specific performance." However, the court found that a question of material fact still remained regarding whether or not the doctrine of laches barred the Spicklers from securing an order of specific performance. An evidentiary hearing was held on this question pursuant to M.R. Civ. P. 56(d).

[¶ 10] In its final decision, the court found that the Spicklers first learned of the sale to the Van Dams in March 1999 and "did nothing thereafter." Responding to the Spicklers' argument that they could not assert their rights in the property until the Van Dams disclosed the terms of the purchase, the court concluded that Robert, who was a "person of some sophistication" in real estate, had both the financial means and the ability to determine the sale terms by initiating a lawsuit and conducting discovery. The court further concluded that the right of first refusal was a right that belonged to the Spicklers, and that it was up to them, not the Van Dams, to "turn to the court in aid of their rights."

[¶ 11] Finding that the Spicklers were responsible for unreasonable delay—the first element of the laches doctrine—the court next examined whether the Van Dams had also established the second element, prejudice resulting from the delay. The court concluded that the Van Dams

2. In a deed dated March 2002, Olive assigned the lien claim to Robert.

3. The Van Dams amended the complaint, which was originally filed only against Olive, to join Robert when the Van Dams discovered the March 2002 deed.

were unfairly prejudiced by the delay because: (1) they had continued to pay the real estate taxes on the property during the five-year period; (2) they had lost the opportunity to invest and obtain a return on the amount the Spicklers would have had to pay to exercise the right of first refusal; and (3) Lot 25 had increased in value. Having determined that both elements of the laches doctrine had been established, the court concluded that the Spicklers' claim for specific enforcement of the right of first refusal was barred by laches. This appeal followed.

## II. DISCUSSION

 [¶ 12] Laches will bar a claim of specific performance where "the omission to assert a right for an unreasonable and unexplained length of time . . . has been prejudicial to an adverse party, [such that] it would be inequitable to enforce the right." *Northeast Harbor Golf Club, Inc. v. Harris*, 1999 ME 38, ¶ 19, 725 A.2d 1018, 1023 (quotation marks omitted). Additionally, "[a] party is as much open to the charge of laches for failure to prosecute a case diligently as for undue delay in its institution." *Kelley v. Bhd. of R.R. Trainmen*, 148 Me. 95, 99, 90 A.2d 717, 720 (1952) (quotation marks omitted). Whether the equitable doctrine of laches bars a claim is an issue of law that we review de novo. *Longley v. Knapp*, 1998 ME 142, ¶ 10, 713 A.2d 939, 943. However, we review a trial court's factual findings for clear error. *Estate of Martin*, 2008 ME 7, ¶ 18, 938 A.2d 812, 819.

[¶ 13] The Spicklers argue that laches does not require a holder of a right of first refusal to initiate a lawsuit in order to assert his or her right. They contend that

a holder of a right of first refusal has no duty to act before being offered the opportunity to exercise the right, and that the Van Dams had an equitable duty to offer the property to them. The Van Dams respond that a holder of a right of first refusal must make a prompt and diligent investigation of the terms of a sale. They further assert that laches bars a claim where a case is not prosecuted diligently, and that the court correctly concluded that the Spicklers' failure to initiate suit constituted unreasonable delay.

[¶ 14] This case requires us to answer three questions. First, we examine what duties are incurred by third-party purchasers, such as the Van Dams, who purchase property with actual knowledge of a right of first refusal. Second, we examine what duties belong to a holder of a right of first refusal who discovers, as the Spicklers did, that property has been conveyed in violation of their right of first refusal. Third, in light of the previous two questions, we determine whether the Spicklers are barred by laches from enforcing their right of first refusal against the Van Dams.[4]

### A. The Duties of Third–Party Purchasers

[¶ 15] The Spicklers argue that because the Van Dams purchased Lot 25 with knowledge of the Spicklers' right of first refusal, the Van Dams were not bona fide purchasers and therefore incurred an "equitable duty to convey, or to at least offer to convey, the property to the Spicklers." We agree that the Van Dams are not bona fide purchasers, but disagree that the Van Dams have consequently incurred an equitable duty to offer the property to the Spicklers.

4. The Superior Court also considered whether the right of first refusal violated the rule against perpetuities, concluding that it did not. *See White v. Fleet Bank of Me.*, 1999 ME 148, 739 A.2d 373. Because neither party has raised the issue on appeal, we do not address the application of the rule against perpetuities to the right of first refusal at issue in this case.

[¶ 16] Contrary to the Spicklers' argument, the equitable duty to offer property to a holder of a right of first refusal arises when an owner of property encumbered by the right contemplates a disposition of the property. *See* 25 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 67:85, at 502 (4th ed. 2002) (noting that a right of first refusal "limits the right of the owner to dispose freely of its property by compelling the owner to offer it first to the party who has the first right to buy"). The owner of the property who had that duty was Marco. Here, the Van Dams, as purchasers who then became owners subject to that duty, have not attempted to transfer the property to another party and have therefore not incurred an obligation to satisfy the extant right of first refusal by offering the property to the Spicklers.

[¶ 17] The duty imputed to an owner contemplating the disposition of property encumbered by a right of first refusal is not the same as the duty imputed to a third-party purchaser of such property. Rather, a third-party purchaser who purchases property "with knowledge of an extant right of first refusal ... must affirmatively inquire to determine whether the right holder wants to exercise its rights, and a failure to do so ... precludes 'good faith purchaser' status, and subjects the purchaser to a decree of specific performance." *Id.* § 67:85, at 505. Thus, when the Van Dams discovered the Spicklers' right of first refusal, it was incumbent on them to affirmatively inquire whether the Spicklers wished to exercise their right before the Van Dams completed the purchase. Because the Van Dams failed to perform that inquiry, the Superior Court correctly concluded that they are not bona fide purchasers and are subject to the possibility of a decree of specific performance.

## B. The Duties of a Holder of a Right of First Refusal

[¶ 18] The Spicklers argue that as holders of a right of first refusal, they had no duty to act before being offered the opportunity to exercise their right, and that because they received no offer from the Van Dams they were absolved from taking any action to enforce their right.

[¶ 19] Generally, the "holder of a right of first refusal on a piece of land only has the right to receive an offer to buy the land." 3 Eric Mills Holmes, *Corbin on Contracts* § 11.3, at 470 (Joseph Perillo ed., 1996). A right of first refusal is therefore distinguishable from an option, which gives the option-holder the "power to make a contract solely by calling upon the owner to perform." *Id.*

[¶ 20] However, a right of first refusal "ripens" into an option once an owner receives an offer and makes a good-faith decision to accept it. *Id.* § 11.3, at 470–71; Williston & Lord, *supra*, § 67:85, at 502; *Greenfield Country Estates Tenants Ass'n v. Deep*, 423 Mass. 81, 666 N.E.2d 988, 993 (1996). Furthermore, an owner who transfers property to a third party in violation of a right of first refusal creates "an enforceable option in the right-holder." *Koch Indus. v. Sun Co.*, 918 F.2d 1203, 1211 (5th Cir.1990); *see also* Holmes, *supra*, § 11.3, at 480 ("Although [the right-holder's] Right of First Refusal was not an Option Contract, [the owner's] wrongful act has caused it to become one."). Once a right of first refusal "ripens" into an option, "contract law applicable to option contracts applies." Holmes, *supra*, § 11.3, at 471 n. 6.

[¶ 21] When a transfer of property in violation of a right of first refusal gives rise to an enforceable option, the option "is not perpetual and the right-holder must choose between exercising it

or acquiescing in the transfer of property." *A.G.E., Inc. v. Buford,* 105 S.W.3d 667, 673 (Tex.App.2003); *see also Koch,* 918 F.2d at 1211. In determining whether or not to exercise an option, the option-holder must have "enough information about the terms of the ... deal to make an informed choice about purchasing ... on those terms." *Koch,* 918 F.2d at 1212. Initially, the new property owner must make a "reasonable disclosure of the terms of the purchase to the rightholder." *A.G.E., Inc.,* 105 S.W.3d at 673. However, once a reasonable disclosure is made, the "rightholder has a subsequent duty to undertake a 'reasonable' investigation of any terms unclear to him." *Koch,* 918 F.2d at 1212; *see also* Williston & Lord, *supra,* § 67:85, at 504. The power of acceptance lapses after a reasonable time. *A. G.E., Inc.,* 105 S.W.3d at 673.

[¶ 22] From the foregoing, it is clear that the Spicklers misconstrue their responsibilities under their right of first refusal. When Marco sold Lot 25 to the Van Dams in violation of the right of first refusal, the Spicklers' right of first refusal ripened into an option. Although Brian Van Dam did not divulge all of the details of the sale, he did inform Robert that he had paid $35,000 for Lot 25. Given Robert's extensive real estate background, and the relative lack of complexity involved in the sale of Lot 25, an unimproved parcel, Brian's disclosure was a reasonable disclosure sufficient to put the Spicklers on notice of a need to undertake a reasonable investigation. It was therefore incumbent on the Spicklers to investigate any terms that were unclear to them in order to determine whether or not they wished to exercise their enforceable option. The Spicklers did no such thing. Indeed, the only investigation the Spicklers undertook was to ask the Van Dams in their initial conversations what the terms of the sale were. They failed to contact Marco, their grantee. Although the Spicklers claim

that they should not be forced to litigate in order to discover the terms of the sale to the Van Dams, they do not point to any other action taken by them over a period of approximately five years to inquire about or discover the terms of the sale.

## C. The Application of Laches

[¶ 23] The Spicklers' fundamental argument is that laches cannot run against them unless the Van Dams made an offer to them in recognition of their right of first refusal. They further argue that any prejudice suffered by the Van Dams is the result of their decision to purchase the property with the knowledge that it contained a right of first refusal in favor of another party. Based on the foregoing analysis, however, the Superior Court did not err in concluding that the Spicklers delayed enforcing their right of first refusal for an unreasonable period of time.

[¶ 24] The Spicklers were first apprised of the sale to the Van Dams in March 1999. Despite having an enforceable option, and despite a clear threat to their right, the Spicklers failed to initiate proceedings for specific performance against the Van Dams. Instead, the Spicklers only sought to assert their right in response to the complaint filed by the Van Dams in 2004. The Superior Court could reasonably conclude that the delay occasioned by the Spicklers' failure to make any inquires or take any action for a period of approximately five years was unreasonable. *Cf. Glew v. Glew,* 1999 ME 114, ¶ 14, 734 A.2d 676, 681–82 (concluding that a party's seven-year delay in bringing suit was not unreasonable where the party had made over a hundred inquiries during that period seeking information needed to determine whether it was in that party's interest to bring suit).

[¶ 25] As the Superior Court found, the second component of laches was

also established because the Van Dams would be prejudiced by a decree of specific performance. In finding prejudice, factors that may be considered include changes in value of the property or rights at issue, *see Gildersleeve v. N.M. Mining Co.*, 161 U.S. 573, 578, 16 S.Ct. 663, 40 L.Ed. 812 (1896), and the current owners' payment of the costs of maintaining the property, *see Philippine Am. Lace Corp. v. 236 W. 40th St. Corp.*, 32 A.D.3d 782, 822 N.Y.S.2d 25, 27 (2006).

[¶ 26] The court found that Lot 25 "has appreciated steadily and significantly in value and in today's market would be worth at least $100,000." The court also found that the Van Dams' recent real estate taxes on Lot 25 had been in the "five to six hundred dollar range." Based on those findings, the court concluded that a decree of specific performance would prejudice the Van Dams because of their payment of taxes in the years since the Spicklers discovered the sale, and "by virtue of not only the loss of greatly appreciated value but also in the loss of opportunity to have put their purchase price funds to other uses including simply making a bank deposit at interest."

[¶ 27] In the absence of a request for findings of fact, "we will infer that the court made all the necessary findings of fact to support the judgment, if those findings are supported by evidence in the record." *Lyons v. Baptist Sch. Of Christian Training*, 2002 ME 137, ¶ 13, 804 A.2d 364, 369. In this case, although the record prevented the court from determining with specificity the amount by which Lot 25 had increased in value, the evidence would have supported a finding that Lot 25 had appreciated steadily and significantly in value since the Spicklers first learned of the sale to the Van Dams. Similarly, the evidence would have supported a finding that, had the Spicklers exercised their right upon discovering the

sale, the Van Dams would have had the opportunity to direct the purchase price funds towards other investment opportunities. In short, the record supports the view that a decree of specific performance would have prejudiced the Van Dams because of their payment of taxes on Lot 25, the change in value in the property, and their loss of other investment opportunities. Therefore, the Spicklers' claim for specific performance against the Van Dams is barred by laches.

The entry is:

Judgment affirmed.